**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| ANATOLIE STATI, *et al.*, Petitioners, | ) | |
| v. | ) | Civil Action No. 14-1638 (ABJ) |
| REPUBLIC OF KAZAKHSTAN, Respondent. | ) | |

**ORDER**

On September 30, 2014, petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd., filed a petition to confirm a December 19, 2013 arbitration award that they obtained against respondent, the Republic of Kazakhstan, related to Kazakhstan's alleged violation of the Energy Charter Treaty. Pet. to Confirm Arbitral Award [Dkt. # 1] ("Pet.") ¶¶ 34, 36; Arb. Award [Dkt. # 2-1, 2-2, 2-3, 2-4] ("Award"). The petition to confirm the arbitration award is fully briefed, and the Court has taken the matter under advisement.

On April 5, 2016, respondent filed a motion for leave to supplement the record and supply new grounds for its opposition. Mot. by Resp't for Leave to Submit Additional Grounds in Supp. of Opp. to Pet. [Dkt. # 32] ("Mot."). In the absence of any authority setting forth the standard to be applied to such a motion, respondent references Federal Rule of Civil Procedure 15(d) "[b]y analogy." *Id.* at 5. The rule states: "[o]n motion and reasonable notice, the court may, on just terms, permit a party to serve a supplemental pleading setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented." Fed. R. Civ. P. 15(d).

The motion asserts that respondent has "new evidence" that petitioners "obtained the [arbitration award] through fraud." Mot. at 4, 6. It explains that, of the approximately $498 million

awarded to the petitioners, $199 million "represented compensation for a liquefied petroleum gas plant (the 'LPG Plant')." Mot. at 2. Respondent argues that the supplemental evidence will prove that "Petitioners fraudulently and materially misrepresented the LPG Plant construction costs for which they claimed reimbursement in the [arbitration]." *Id.* at 4. Respondent has apparently obtained this "new evidence" in connection with a proceeding it filed in Sweden to set aside the arbitral award. *Id.* at 2–3.

Petitioners oppose the motion. They invoke the principles that would apply when a party seeks to amend a complaint and maintain that the proposed amendments would be futile. Pet.'rs' Mem. of P. & A. in Opp. to Resp. Mot. [Dkt. # 34] at 5–10. Quoting language from Rule 15(d), they also complain that supplementing the record at this time will not foster the economic and speedy disposition of the case, that the motion was brought with undue delay, and that it would cause undue prejudice. *Id.* at 10–13. According to petitioners, respondent gained access to the "new evidence" in June of 2015, and it presented the same information to the Swedish court in October of 2015, approximately six months before it sought leave to supplement its opposition here. *Id.* at 8, 12–13.

In its reply, respondent notes that when a court assesses a proposed amendment to a pleading that has been opposed on futility grounds, the court considers whether the proposed amendment would survive a motion to dismiss. Reply in Supp. of Mot. [Dkt. # 35] at 1–4. It states that under that standard, its motion should be granted. *Id.* at 3–4.

But the analogy does not quite fit. We are not dealing with a proposed amended complaint here, and it is not even petitioners who are seeking leave to amend. Instead, respondent is seeking to add new grounds to its opposition to the petition to confirm the award, more than a year after the original opposition was filed.

Neither party has cited any authority applying Rule 15 to this type of proceeding. But the rule respondent invoked is plainly discretionary ("the court may"), and both Rule 15(d) and Rule 15(a)(2) – the rule that would apply if a party was seeking to amend a complaint at this juncture – turn on what is "just" or whether "justice so requires." Fed. R. Civ. P. 15(a)(2), (d).

Respondent argues that its supplemental submission will prove that "[p]etitioners fraudulently and materially misrepresented the LPG Plant construction costs for which they claimed reimbursement in the [arbitration]." Mot. at 4. But the Court concludes that it would not be in the interest of justice to broaden the scope of this proceeding to consider whether petitioners did or did not mislead the foreign arbitration panel when it presented evidence related to the value of the plant in question. The Court has not come to any conclusions about the legitimacy of the evidence presented to the arbitrators on this issue. But it has reviewed the arbitration award, and it is clear that the arbitrators did not rely upon the allegedly fraudulent evidence in reaching their decision, so respondent's proposed submissions would not be germane to the petition to confirm the award.

In attempting to establish the value of the LPG Plant and the costs incurred in constructing it, both sides submitted testimony and expert reports. *See* Award ¶¶ 1693–1711 (petitioners' arguments); *id.* ¶¶ 1712–42 (respondent's arguments). But the arbitrators ultimately declined to credit either set of experts:

> Regarding the value of damages caused by Respondent's action, the Tribunal has taken note of the various extensive arguments submitted by the Parties relying on their respective experts' reports. However, the Tribunal considers that it does not have to evaluate these reports and the very different results they reach. In the view of the Tribunal, the relatively best source for the valuation . . . are the contemporaneous bids that were made for the LPG Plant by third parties after Claimants' efforts to sell the LPG Plant . . . .

*Id.* ¶ 1746. The panel concluded:

> [T]he Tribunal considers it to be of particular relevance that an offer was made for the LPG Plant by state-owned KMG at that time for USD 199 million. The Tribunal considers that to be the relatively best source of information for the valuation of the LPG Plant among the various sources of information submitted by the Parties regarding the valuation for the LPG Plant during the relevant period . . . . Therefore, this is the amount of damages the Tribunal accepts in this context.

*Id.* ¶¶ 1747–48.

Under those circumstances, and given the fact that the issue has already been presented to the Swedish authorities, it will not be in the interest of justice to conduct a mini-trial on the issue of fraud here when the arbitrators themselves expressly disavowed any reliance on the allegedly fraudulent material. For those reasons, it is hereby **ORDERED** that respondent's motion for leave to submit additional grounds in support of its opposition to the petition to confirm the arbitral award is **DENIED**.

The Court also notes that it has reviewed all of the pleadings concerning subject matter jurisdiction. *See* Min. Order (Oct. 21, 2015); Pet'rs' Mem. of Law Submitted in Accordance with the Court's Order of 10/21/2015 [Dkt. # 30]; Resp't's Mem. on Subject Matter Jurisdiction [Dkt. # 31]. It has concluded that it has jurisdiction to consider the pending petition, and it will set forth the reasons underlying that determination in its opinion addressing the merits of the petition. The Court has the matter under advisement, and it will schedule a hearing on the petition if and when it deems it necessary to do so.

**SO ORDERED**.

AMY BERMAN JACKSON
United States District Judge

DATE: May 11, 2016