**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ANATOLIE STATI; GABRIEL STATI; ASCOM GROUP, S.A.; TERRA RAF TRANS TRAIDING LTD., <br><br> Petitioners, <br><br> v. <br><br> REPUBLIC OF KAZAKHSTAN, <br><br> Respondent. | ) ) ) ) ) ) ) ) ) ) ) ) |

Civil Action No. 1:14-cv-1638-ABJ

**RESPONDENT REPUBLIC OF KAZAKHSTAN'S**
**MOTION FOR RECONSIDERATION OF MAY 11, 2016 ORDER**

# EXHIBIT 6



| «ҚазМұнайГаз» Барлау Өндіру» акционерлік қоғамы | KazMunaiGas Exploration Production Joint Stock Company | Акционерное общество «Разведка Добыча «КазМунайГаз» |
|---|---|---|
| Қазақстан Республикасы, 010000, Астана қаласы, Тәуелсіздік көшесі, 2 телефон: +7 7172 97 74 01 факс:     +7 7172 97 74 26 | 2, Tauelsizdik street Astana 010000, Republic of Kazakhstan telephone: +7 7172 97 74 01 facsimile:  +7 7172 97 74 26 | Республика Казахстан, 010000, город Астана, улица Тәуелсіздік, 2 телефон: +7 7172 97 74 01 факс:     +7 7172 97 74 26 |

« 25 »   09   200 8г

№  11-19/4222

**Strictly private and confidential**

**Vladimir Rusinov**
**Director**
**Head of Oil & Gas**
**Renaissance Capital**
**Moscow City, Naberezhnaya Tower, Block C**
**18, Krasnopresnenskaya Naberezhnaya**
**Moscow, 123317, Russia**

**Patrick Vasgimorukian**
**Managing Director**
**Head of Investment Banking Central Asia**
**Renaissance Capital**
**Esentai Tower**
**77/7 Al-Farabi Avenue**
**Almaty, 050060, Kazakhstan**

Dear Sirs:

We would like to thank you for your letter dated 15 August 2008 (the **"Process Letter"**), inviting us on behalf of Mr.Anatol Stati, Ascom S.A. and Terra Raf Trans Traiding Limited (collectively the **"Shareholders"**) to participate in the proposed sale (the **"Proposed Transaction"**) of up to 100% of the Shareholder's interest in Kazpolmunay LLP and Tolkynneftegaz LLP (collectively, the **"Company"**).

KazMunaiGas Exploration Production JSC is pleased to submit this preliminary non-binding offer (the **"Indicative Offer"**) to acquire up to 100% of the Shareholders' interest in the Company, subject to the contents of this letter.

The primary rationale behind our interest in the Company is the strategy to continue increasing our reserves of hydrocarbon resources and building oil production through acquisitions of oil and gas producing assets in accordance with our Corporate Development Strategy.

Our Indicative Offer is detailed below, and presented in the sequence set out as requested in the Process Letter. For the avoidance of doubt, capitalized terms used in this letter have the same definition as in the Process Letter, unless stated otherwise.

0013451

## Details of the Indicative Offer

a) *details of the proposed acquiring entity, including its ultimate ownership, and confirmation that such entity is acting as principal. In the case of a consortium or joint venture specify the identity of each partner, proposed roles of each partner and their proposed percentage holding in the acquiring entity. In the case of consortium or joint venture in which the selection of the partner has not yet been finalised, the identity of each prospective partner, proposed roles of each prospective partner, their proposed percentage holding in the acquiring entity, and a summary of the level of progress on JV discussion (including time and process required to finalise the partners involvement)*

KazMunaiGas Exploration Production JSC (**"KMG EP"**) is a dual-listed oil and gas exploration and production company, incorporated and operating in Kazakhstan. 61% of its shares belong to the National Company KazMunaiGas, which in turn is 100% controlled by the Government of the Republic of Kazakhstan (Kazakhstan Holding for Management of State Assets "Samruk"). KMG EP was created through the merger of JSC Uzenmunaigas and JSC Embamunaigas in March 2004. KMG EP is developing 46 fields in Western Kazakhstan, the largest being the Uzen field (in production since 1965). As of the end of 2007, proved plus probable oil reserves were estimated at 240 million tonnes (1,767 million barrels), with an estimated reserves life of 22 years, based on 2006 production level and 2P reserves.

Following the success of its Initial Public Offering (IPO) at the end of 2006, KMG EP has established a strong foundation for future growth through implementing its selective, high impact acquisition strategy and continued investment in its core producing fields.

In April 2007 KMG EP acquired a 50% stake in JV KazGerMunai LLP, and in December 2007 a 50% stake in CCEL (CITIC Canada Energy Limited). These events led to the Company becoming the second largest oil producer in Kazakhstan.

KMG EP intends to act in the Proposed Transaction as a sole principal, and not as a nominee, broker or an agent for any other party. At this stage, we do not envisage entering into any consortium or joint venture arrangements with third parties for the purposes of consummating the Proposed Transaction.

Subject to further determination and analysis of the proposed transaction structure, KMG EP may elect to create a Special Purpose Vehicle company, incorporated solely for the purpose of completing the Proposed Transaction.

b) *The Indicative Offer should relate to 100% of the share capital of the Company*

The Indicative Offer herein relates to the proposed acquisition of 100% of the share capital of the Company

c) *the amount of cash, stated in United States Dollars, which you are prepared to pay on a debt (including intergroup balances) and cash free basis (i.e. enterprise value) expressed as a single number and not a range or formulae (should your offer be expressed in a form of a range, we will assume the bottom end of the range to represent your offer);*

On the basis of the information contained in the Information Memorandum and publicly available information, subject to the conditions and assumptions set out elsewhere in this Indicative Offer and contingent upon further due diligence at Phase II of the sale process, we value the Company at US $754 million on a debt free and cash free basis (the **"Enterprise Value"**) for expected completion of the Proposed Transaction in January 2009.

d) **the breakdown of such consideration by each of the assets: Borankol field, Tolkyn field and LPG plant;**

We estimate the value of the Borankol field at US $100 million, the value of the Tolkyn field at US $455 million, and the value of the LPG plant at US $199 million.

e) **the detailed source of financing available to complete the Transaction and, if applicable, a description of the consents, approvals or other conditions required for such funding;**

In its capacity of a principal investor, KMG EP envisages that it will finance the proposed acquisition using its own balance sheet from the cash available to it at present (ie, an all-equity acquisition). While we do not reasonably anticipate any changes to this position, in the unlikely event of the change in circumstances, KMG EP may consider raising mezzanine, hybrid or other form of intermediate debt financing.

f) **any key assumptions and valuation methodology that you have used in arriving at the level of consideration including the variables to which your final valuation is most sensitive;**

In formulating our Indicative Offer, we have relied upon the information contained in the Information Memorandum and certain other publicly available information. Our valuation depends upon this information and assumptions being substantiated in the next round through due diligence materials and meetings.

Due to lack of sensitive input data, we used comparative (transaction and trading multiples) method for valuation of Borankol and Tolkyn fields, whereas the LPG plant was valued using the combination of comparative and cost methods.

The valuation of the Borankol field and the Tolkyn field was performed by applying the relevant EV/Reserves multiple to the fields' reported 2P (proved + probable) reserves as per Information Memorandum. In our estimates, we have used the multiplier equal to US $3.93/bboe, which was derived as a mean between applicable transaction[1] and trading[2] multiples.

The value of the LPG plant was calculated as an arithmetical average between the matrix of comparative method value and cost method value. EV/EBITDA multiple of 5.5x was used as a base for comparative method valuation[3]. Historical costs of US $193 million were used as a base for cost method valuation.

*Inter alia*, our estimates of the Company's value and the present Indicative Offer are based on the following key assumptions:

o   Other than as disclosed in the Information Memorandum, the Company does not have any material tax, legal or financial liabilities, nor any off-balance sheet or contingent liabilities, and is sold with a normalized level of working capital;
o   No additional costs or expenses related to the Proposed Transaction arising from debt, contracts or other obligations from the Company;
o   The Proposed Transaction will have economic effect as of January 2009;

---

[1] Source: comparable M&A transactions in Kazakhstan between 2006 and 2008, where data is publicly available. Adjusted for differences in operating environment.
[2] Source: comparable publicly traded oil & gas companies with operations in Central Asia. Adjusted for estimated control premium.
[3] Source: adjusted expert opinions.

- o Proven, probable and possible reserves of the Company as of January 1, 2008 were as reported in the Information Memorandum, and no material change thereto has occurred or is known to be occurring as of the date of this Indicative Offer;
- o Historical production, revenues, costs and CAPEX were as reported in the Information Memorandum;
- o The Company's licences (exploration and production) as reported in the Information Memorandum are in force as of the date of this Indicative Offer, and no material change thereto has occurred or is known to be occurring as of the date of this Indicative Offer;
- o 2008 and 2009 production projections within the Information Memorandum are significantly verified by monthly YTD trading and discussions with management;
- o Completion of the LPG processing facility in Q2 2009;
- o Ability to export up to 7 bcm of gas starting from 2009 pursuant to negotiations currently underway between the Company and KazTransGas and KazAzot.

**g)  *confirmation that your Indicative Offer has, to the extent required, received all the necessary approvals required by the acquiring entity and a description of any corporate, shareholder, regulatory, anti-trust or other consents that would be required before the acquiring entity could enter into a definitive, binding sale and purchase agreement, or which would be a condition to the completion of the Transaction;***

We have obtained all necessary corporate authorizations including KMG EP Management Board approval in accordance with applicable regulations required for submission of this Indicative Offer.

Prior to submission of the final committal offer and conclusion of a definitive, binding sale and purchase agreement between KMG EP and the Shareholders, approval of the Board of Directors of KMG EP will be required (subject to satisfactory due diligence). The next Board of Directors meeting is scheduled for mid-December 2008.

Approval of National Company KazMunaiGas will be required, which we will seek in due course according to its regulations.

Other consents and approvals may be required under the general corporate legislation of the Republic of Kazakhstan to effect the proposed sale and purchase agreement. It is not expected that such approvals would delay execution of the Proposed Transaction materially beyond the timeline that is generally acceptable for transactions of this nature in the Republic of Kazakhstan.

**h)  *confirmation that you can meet the proposed Transaction timeline;***

If we are selected to participate in Phase II of the sale process, we expect to be able to meet the Proposed Transaction timeline as provided for in the Process Letter subject to our internal procedures and regulations.

**i)  *the relevant contact details of those individuals, including advisors (financial, legal, etc.) assisting you, who may be contacted by RenCap to discuss your Indicative Offer;***

You may contact the following employees of KMG EP to discuss the Indicative Offer:

| | |
|---|---|
| Dastan Abdulgafarov | Medet Suleimenov |
| Managing Director | Director |
| Business Development | Strategy and Project Development Department |
| Tel: +7 (7172) 975 404 | Tel: +7 (7172) 977 567 |
| D.Abdulgafarov@kmgep.kz | M.Suleimenov@kmgep.kz |

Talgat Sarsekov
Deputy Director
Strategy and Project Development Department
Tel: +7 (7172) 975 441
T.Sarsekov@kmgep.kz

Enclosed with this letter is a list of advisers whom we may retain to assist KMG EP in course of the Proposed Transaction *(Appendix 1)*.

*j)* **any other information which may be relevant in the consideration of your Indicative Offer;**

Prior to submitting a final, firm offer we will expect to be provided an opportunity to conduct an in-depth business analysis of the Company including, but not limited to, technical, geological, environmental, tax, legal and financial analysis, customary to the transactions of this nature.

KMG EP and its advisors are prepared to begin reviewing the electronic data room and the vendor due diligence reports immediately, and would anticipate, at the very least, performing the following additional due diligence:

o  Meetings with the Company's management team to discuss the strategy of the Company, its business plan, growth prospects, and human resources topics, as well as environmental and legal issues;
o  Meeting with the Company's statutory auditors;
o  Meetings with each of the vendor due diligence reports' providers (where applicable) for Q&A sessions, and follow-up written questionnaires;
o  Conduct site visits;
o  Meetings with the key entities potentially having a meaningful impact on the Company's prospects such as the industry regulator, major trading counterparties etc.
o  Standard and customary due diligence from a buyer's point of view, including legal (commercial, financing and related parties' contracts, insurance, off-balance sheet commitments, litigations), tax & accounting, technical & IT, environmental, pension, employee benefits and regulatory reviews.

All such due diligences can be conducted simultaneously and should be completed within the reasonable timeframe provided for in the Information Memorandum.


*k)* **as discussed in the Information Memorandum, your Indicative Offer may also include the acquisition of 100 per cent of the share capital of Tristan Oil Ltd, a British Virgin Islands entity that was formed solely to issue US$420 million of 10½% senior secured notes issued by Tristan Oil Ltd. that are guaranteed by the Company. If your Indicative Offer includes the acquisition of Tristan Oil, Ltd., it should address the matters sets forth above with respect to Tristan Oil Ltd. and the Company.**

Due to lack of available information on Tristan Oil Ltd., this Indicative Offer does not include the acquisition of 100 per cent of the share capital of Tristan Oil Ltd; however, in case we are granted admission to Phase II of the sale process, subject to acceptable due diligence and disclosure, we would like to reserve the right to submit our offer for Tristan Oil Ltd. along with our final offer for 100% interest in the Company.

The contents of this letter are confidential and are only to be provided to the Shareholders and their professional advisers, who are involved in the Proposed Transaction.

We would like to thank you again for the opportunity to submit this Indicative Offer. The Proposed Transaction fits well within our development strategy while providing the Shareholders with attractive investment opportunity.

We would be delighted to work with you and the Company on this transaction.

**Sincerely yours,**

**Askar Balzhanov**
**General Director**

## Important Notice

This Indicative Offer is intended to serve as a basis for KMG EP to proceed further with negotiations concerning the potential acquisition of the Company. This Indicative Offer does not create a binding offer or agreement. This Indicative Offer does not create or imply any legal rights or obligations between KMG EP and any other person, which will come into existence only upon reaching agreement on terms and conditions, execution and delivery of an appropriate final and binding acquisition agreement and related agreements and satisfaction of all completion conditions contained therein. This Indicative Offer does not cover all essential terms and conditions of the potential acquisition of the Company. We reserve the right to withdraw from the process, negotiations and/or due diligence review at any point in time, without any liability or indemnification vis-à-vis the Company and/or its advisors.

*Appendix 1*
## List of potential advisers

**Investment banks:**
- JP Morgan
- Morgan Stanley
- BNP Paribas
- Citigroup
- Credit Suisse
- UBS
- Goldman Sachs

**Legal advisers:**
- Squire, Sanders and Dempsey
- Norton Rose
- Shearman & Sterling
- Slaughter and May
- White & Case
- Denton Wilde Sapte
- Baker & McKenzie
- Linklaters
- Macleod Dixon
- Freshfields Bruckhaus Deringer
- Skadden, Arps, Slate, Meagher & Flom
- Herbert Smith
- Dewey & LeBoeuf
- Akin Gump Strauss Hauer & Feld

**Financial/Tax/Environmental advisers:**
- PriceWaterhouseCoopers
- Deloitte & Touché
- Ernst & Young

**Technical auditors:**
- Gaffney, Cline & Associates
- McDaniels
- Ryder Scott
- DeGolyer & MacNaughton