UNITED STATES DISTRICT COURT
DISTRICT OF COLUMBIA

| | |
|---|---|
| ANATOLIE STATI; GABRIEL STATI; ASCOM GROUP, S.A.; TERRA RAF TRANS TRAIDING LTD., <br><br> Petitioners, <br><br> v. <br><br> REPUBLIC OF KAZAKHSTAN, <br><br> Respondent. | Civil Action No. 14-1638 (ABJ) |

**DECLARATION OF ENRIQUE J. MOLINA**

I, Enrique J. Molina, declare as follows:

1. I am an attorney duly admitted to practice in New York. I am an associate at the law firm of King & Spalding LLP, counsel to Anatolie Stati, Gabriel Stati, Ascom Group S.A., and Terra Raf Trans Traiding Ltd. ("Stati parties" or "Petitioners") in this action. The facts set forth herein are personally known to me, and, if called as a witness, I could and would testify competently thereto.

2. On December 19, 2013, the Stati parties obtained an arbitration award (the "Award") in their favor against the Republic of Kazakhstan ("Kazakhstan" or "Respondent"). The Award was rendered by an arbitral tribunal seated in Stockholm, Sweden and constituted under the auspices of the Stockholm Chamber of Commerce ("SCC"). A true and correct copy of the Award is attached hereto as **Exhibit A**.

1

3. In the Award, the arbitral tribunal found that Kazakhstan had breached its obligations under the Energy Charter Treaty ("ECT") with respect to the Stati parties' investments, and ordered Kazakhstan to pay compensation. *See* Exh. A at 414. In particular, the tribunal ordered Kazakhstan to pay the Stati parties US$ 497,685,101.00 in compensation for its ECT violations, plus pre-award interest at the 6-month U.S. Treasury Bill rate from April 30, 2009 until the date of payment, compounded semi-annually, and found that Kazakhstan should bear three quarters of the costs of the arbitration, amounting to EUR 802,103.24. *Id.* Additionally, the tribunal found Kazakhstan liable for 50% of the Stati parties' fees in the arbitration in an amount totaling US$ 8,975,496.40. *Id.*

4. Three months later, on March 19, 2014, Kazakhstan filed an application before the Svea Court of Appeal in Stockholm (the "Swedish Court" and the "Swedish Proceedings") to invalidate the Award under the provisions of the Swedish Arbitration Act, arguing that:

  i. Kazakhstan had been deprived of its right to appoint its own arbitrator;

  ii. The Award is not covered by a valid arbitration agreement between the parties because the Stati parties allegedly failed to abide by the three month cooling off period set forth in the ECT;

  iii. The Award is not covered by a valid arbitration agreement between Kazakhstan and Terra Raf;

  iv. The Tribunal did not consider witness evidence regarding the Quantum of the LPG Plant;

  v. The Tribunal exceeded its mandate and committed multiple procedural mistakes, in addition to ignoring evidence;

      vi. The Tribunal did not consider Kazakhstan's position that certain deductions had to be made in the event an Award was rendered in the Stati parties' favor; and

     vii. The Tribunal exceeded its mandate by going beyond the parties' submissions and ignoring the parties' submissions and the applicable law.

A true and correct copy of Kazakhstan's application is attached hereto as **Exhibit B.**

    5.    On December 9, 2016, the Swedish Court issued its decision in the Swedish Proceedings, wherein it rejected all of Kazakhstan's claims and objections regarding the Award in their entirety, including, after a full hearing during which Kazakhstan proffered all of its evidence, Kazakhstan's claims of fraud  The Swedish Court further awarded the Stati parties all of their legal costs. A true and correct copy of the Swedish Court's decision is attached hereto as **Exhibit C**. By its own terms, the decision of the Swedish Court was not appealable. Exh. C at 66.

    6.    Notwithstanding, on February 3, 2017, Kazakhstan sought to invalidate the decision of the Swedish Court before the Supreme Court of Sweden ("Supreme Court"). A true and correct copy of Kazakhstan's motion is attached hereto as **Exhibit D**. On October 24, 2017, the Supreme Court dismissed Kazakhstan's challenge of the Swedish Court's decision, rendering it final and cementing the Award's validity as a matter of Swedish law. A true and correct copy of the Supreme Court's decision is attached hereto as **Exhibit E**.

    7.    On March 23, 2018, a judgment (the "Judgment") was rendered by this Court in favor of Petitioners, and against Kazakhstan, recognizing and confirming the Stati parties' Award. A true and correct copy of the Judgment is attached hereto as **Exhibit F**. The Judgment

also rejected Kazkhstan's motion to submit new defenses based on evidence that was available to it at the time enforcement proceedings were commenced before this Court. *See* Exh. F at 13-18.

8. To date, Kazakhstan has not made any payment to the Stati parties nor given any indication that it intends to pay the Judgment voluntarily. Kazakhstan has challenged the enforcement of the Award in every jurisdiction the Stati parties have sought to enforce it, and has fought every attempt by the Stati parties to attach its assets. Rather than respecting the finality of the Award, the decisions of the Swedish Court and the Supreme Court, and the Judgment, Kazakhstan is challenging all efforts by the Stati parties to recover the Award, including by filing, shortly after the Supreme Court rejected its application in Sweden, a civil RICO claim against the Stati parties ("RICO Proceeding"). The RICO Proceeding alleges that the Stati parties' actions to obtain recognition of and to enforce the Award constitute a "racketeering conspiracy." Recently, Minister Beketayev, a senior government official, stated publicly that Kazakhstan is already preparing to appeal the Judgment and to suspend its execution. Minister Beketayev further noted that if the Stati parties wish to execute the Judgment in other states in the United States, they will need to re-register the Judgment in the relevant districts, thus extending the execution process by several months, if not years. In all, based on the foregoing facts, Petitioners respectfully submit that it is clear that Kazakhstan does not intend to satisfy the Judgment voluntarily. Petitioners do not believe that Kazakhstan has any executable assets in the District of Columbia.

9. According to public files that Petitioners' counsel have reviewed, Kazahkstan maintains an Embassy in the United States located at 1401 16th Street Northwest, Washington, D.C. A true and correct copy of the home page website of the Kazakhstan Embassy in Washington, D.C. (which was accessed, viewed, and printed at my direction on April 2, 2018),

which displays the Embassy's address, is attached hereto as **Exhibit G**. However, diplomatic property is arguably subject to the protections of the Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227, 500 U.N.T.S. 95. This fact was recently confirmed publicly by Minister Beketayev, who declared that the Embassy of Kazakhstan and the Ambassador's residence are the only property held by Kazakhstan in Washington, D.C.

10.     On information and belief, Kazakhstan maintains assets in several other judicial districts within the United States. For instance, it is believed that affiliates of State Street Corporation, a nationally chartered bank maintaining its headquarters and principal place of business in the District of Massachusetts, serve as managers for certain assets of the Republic of Kazakhstan. On information and belief, the Republic of Kazakhstan also holds assets at various financial institutions with their principal place of business in New York, and the global custodian for Kazakhstan's National Fund, which Petitioners understand to be an unincorporated aggregation of assets resulting from Kazakhstan's oil and gas business activities, is an affiliate of BNY Mellon, which maintains its principal place of business in the Southern District of New York.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 23, 2018

_____
Enrique J. Molina

5