## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ANATOLIE STATI; GABRIEL STATI; ASCOM GROUP, S.A.; TERRA RAF TRANS TRAIDING LTD., )<br><br>Petitioners, )<br><br>v. )<br><br>REPUBLIC OF KAZAKHSTAN, )<br><br>Respondent. ) | Civil Action No. 1:14-cv-1638-ABJ-DAR |

**RESPONDENT'S OBJECTIONS TO MINUTE ORDER DATED AUGUST 13, 2019 DENYING RESPONDENT'S MOTION FOR PROTECTIVE ORDER**

Dated: August 27, 2019

Respectfully submitted,

*/s/ Matthew H. Kirtland*
Matthew H. Kirtland (D.C. Bar No. 456006)
Michael Bhargava (D.C. Bar No. 578078)
Katherine G. Connolly (D.C. Bar No. 1048518)
NORTON ROSE FULBRIGHT US LLP
799 9th Street NW
Washington, D.C. 20001
Telephone: (202) 662-0200
Facsimile: (202) 662-4643
matthew.kirtland@nortonrosefulbright.com
Michael.bhargava@nortonrosefulbright.com
katie.connolly@nortonrosefulbright.com

Kelly Klingseisen (admitted *pro hac vice*)
NORTON ROSE FULBRIGHT US LLP
98 San Jacinto Boulevard
Austin, Texas 78701
Telephone: (512) 536-5260
Facsimile: (512) 536-4598
kelly.klingseisen@nortonrosefulbright.com

*Counsel for Respondent Republic of Kazakhstan*

## <u>TABLE OF CONTENTS</u>

**Page**

SUMMARY OF GROUNDS FOR OBJECTIONS.................................................................... 2

LEGAL STANDARD.............................................................................................................. 6

RELEVANT BACKGROUND ............................................................................................... 15

ARGUMENT ........................................................................................................................... 25

      I.      Petitioners Are Not Entitled to Non-U.S. Discovery........................................... 25

              A. *NML Capital* Does Not Entitle Petitioners to Sweeping Foreign
Discovery ..................................................................................................... 26

              B. *NML Capital* Is Not a New York Convention Case..................................... 27

      II.     Petitioners Are Not Entitled to Discovery Regarding Instrumentalities.............. 30

      III.    Further Discovery Is Irrelevant and Cumulative Because Sufficient Assets
Are Already Attached in Europe........................................................................... 34

CONCLUSION......................................................................................................................... 37

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Amduso v. Republic of Sudan*,
  288 F. Supp. 3d 90 (D.D.C. 2017) ........................................................................28

*Am. Ctr. for Civil Justice v. Ambush*,
  794 F. Supp. 2d 123 (D.D.C. 2011) ........................................................................6

*Arch Trading Corp. v. Republic of Ecuador*,
  839 F.3d 193 (2d Cir. 2016)........................................................................14

*Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*,
  783 F.3d 1010 (5th Cir. 2015) ........................................................................29

*Burka v. Dep't of Health and Human Servs.*,
  87 F.3d 508 (D.C. Cir. 1996) ........................................................................7

*Chevron Corp. v. Republic of Ecuador*,
  987 F. Supp. 2d 82 (D.D.C. 2013) ........................................................................18

*Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*,
  110 F. Supp. 3d 37 (D.D.C. 2015)........................................................................34

*Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*,
  308 F.R.D. 27 (D.D.C. 2015)........................................................................9, 11, 29

*Costamar Shipping Co. v. Kim-Sail, Ltd.*,
  No. 95-cv-3349, 1995 WL 736907 (S.D.N.Y. Dec. 12, 1995)........................................32, 33

*Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*,
  No. 18-cv-2797, 2019 WL 3403888 (3d Cir. July 29, 2019)........................................34

*De Letelier v. Republic of Chile*,
  748 F.2d 790 (2d Cir. 1984)........................................................................13, 15, 31, 32

*Democratic Republic of Congo v. FG Hemisphere Assocs.*,
  LLC, 508 F.3d 1062 (D.C. Cir. 2007) ........................................................................29

*E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*,
  286 F.R.D. 288 (E.D. Va. 2012) ........................................................................25

*EM Ltd. v. Republic of Argentina*,
  473 F.3d 463 (2007)........................................................................25

*EM Ltd. v. Republic of Argentina*,
  695 F.3d 201 (2d Cir 2012)........................................................................12, 28

*Exp.-Imp. Bank of the Republic of China v. Grenada*,
  768 F.3d 75 (2d. Cir. 2014).................................................................................15

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
  603 F. Supp. 2d 1 (D.D.C. 2009) ........................................................................29

*FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*,
  637 F.3d 373 (D.C. Cir. 2011) ............................................................................11

*FG Hemisphere Assocs., LLC v. Republique du Congo*,
  455 F.3d 575 (5th Cir. 2006) ................................................................................9

*First City, Texas-Houston, N.A. v. Rafidain Bank*,
  150 F.3d 172 (2d Cir. 1998)..................................................................................8

*First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd.*,
  703 F.3d 742 (5th Cir. 2012) ..............................................................................30

*First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*,
  462 U.S. 611 (1983)......................................................................13, 14, 31, 32

*Foremost-McKesson, Inc. v. Islamic Republic of Iran*,
  905 F.2d 438 (D.C. Cir. 1990) ..............................................................................9

*Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*,
  284 F.3d 1114 (9th Cir. 2002) ............................................................................30

*GSS Grp. Ltd v. Nat'l Port Auth.*,
  680 F.3d 805 (D.C. Cir. 2012) ............................................................................14

*Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*,
  763 F. Supp. 2d 12 (D.D.C. 2011) ......................................................................28

*Intex Recreation Corp. v. Team Worldwide Corp.*,
  42 F. Supp. 3d 80 (D.D.C. 2013) ..........................................................................6

*ITOCHU Int'l, Inc. v. Devon Robotics, LLC*,
  303 F.R.D. 229 (E.D. Pa. 2014)............................................................................7

*Jewish War Veterans of the U.S. of Am., Inc. v. Gates*,
  506 F. Supp. 2d 30 (D.D.C. 2007) ...................................................................6, 26

*John C. Flood of Virginia, Inc. v. John C. Flood, Inc.*,
  No. 06-civ-1311, 2008 WL 281066 (D.D.C. Feb. 1, 2008)....................................34

*Kelly v. Syria Shell Petro*,
   213 F.3d 841 (5th Cir. 2000) ................................................................................36

*Leibovitch v. Islamic Republic of Iran*,
   297 F. Supp. 3d 816 (N.D. Ill. 2018) ................................................................9, 29

*In re Papandreou*,
   139 F.3d 247 (D.C. Cir. 1998) ..............................................................................8

*Peterson v. Islamic Republic Of Iran*,
   627 F.3d 1117 (9th Cir. 2010) ............................................................................15

*Republic of Argentina v. NML Capital, Ltd.*,
   573 U.S. 134 (2014).............................................................2, 8, 12, 13, 27

*Republic of Philippines v. Pimentel*,
   553 U.S. 851 (2008).............................................................................................15

*Rubin v. The Islamic Republic of Iran*,
   637 F.3d 783 (7th Cir. 2011) ................................................................7, 8, 9, 10

*Rubin v. Islamic Republic of Iran*,
   830 F.3d 470 (7th Cir. 2016) ..................................................................................8

*Scherk v. Alberto-Culver Co.*,
   417 U.S. 506 (1974)..............................................................................................28

*Sourgoutsis v. U.S. Capitol Police*,
   323 F.R.D. 100 (D.D.C. 2017)........................................................................34, 36

*Stati, et al. v. ABN AMRO Holdings USA LLC*,
   No. 15-mc-00052 (S.D.N.Y. 2015)......................................................................22

*Stati, et al. v. Amundi Investments USA*,
   No. 18-mc-00078 (S.D.N.Y. 2018)......................................................................22

*Stati, et al. v. Bank of New York Mellon Corporation*,
   No. 14-mc-00425 (S.D.N.Y. 2014)......................................................................22

*Stati, et al. v. BNP Paribas Asset Management, Inc. et al.*,
   No. 15-mc-00051 (S.D.N.Y. 2015)......................................................................22

*Stati, et al. v. Euroclear Bank*,
   No. 18-mc-00079 (S.D.N.Y. 2018)......................................................................22

*Stati, et al. v. State Street Corporation*,
   No. 1:15-mc-91059 (D. Mass. 2015)...................................................................22

*Stati, et al. v. Union Bancaire Privee Asset Management LLC*,
No. 18-mc-00077 (S.D.N.Y. 2018)........................................................................22

*Stern v. Islamic Republic of Iran*,
73 F. Supp. 3d 46 (D.D.C. 2014) ..........................................................................11

*In re Subpoena to Goldberg*,
693 F. Supp. 2d 81 (D.D.C. 2010) ........................................................................34

*Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*,
924 F. Supp. 2d 508 (S.D.N.Y. 2013).................................................................9, 33

*Transamerica Leasing, Inc. v. La Republica de Venezuela*,
200 F.3d 843 (D.C. Cir. 2000) ....................................................................14, 15, 31

*Trustees of N.Y. City Dist. Council of Carpenters Pension Fund v. Port Parties, Ltd.*, No. 16-cv-4719, 2018 WL 6061205, at *4 (S.D.N.Y. Nov. 20, 2018) ..........................32

*U.S. Int'l Trade Comm'n v. ASAT, Inc.*,
411 F.3d 245 (D.C. Cir. 2005) ..............................................................................32

*U.S. v. All Assets Held at Bank Julius, Baer & Co., Ltd.*,
233 F. Supp. 3d 143 (D.D.C. 2017) ........................................................................6

*United States v. Sci. Applications Int'l Corp.*,
04-cv-1543, 2006 WL 8435222 (D.D.C. Feb. 28, 2006)............................................7

*Walters v. Indus. & Commercial Bank of China, Ltd.*,
651 F.3d 280 (2d Cir. 2011)...................................................................................11

*Walters v. People's Republic of China*,
672 F. Supp. 2d 573, 575 (S.D.N.Y. 2009)..............................................................10

**Rules and Statutes**

28 U.S.C. § 1605 .................................................................................................7

28 U.S.C. § 1609.......................................................................................2, 7, 8, 10

28 U.S.C. § 1610.................................................................................2, 8, 10, 18, 25

28 USC § 1782 ..................................................................................................22

28 U.S.C. § 1963 ................................................................................................18

Fed. R. Civ. P. 26 ....................................................................................... *passim*

Fed. R. Civ. P. 69 ....................................................................................... *passim*

Fed. R. Civ. P. 72 ....................................................................................................................1

Respondent Republic of Kazakhstan ("Respondent") hereby submits these Objections to the Minute Order of the Honorable Magistrate Judge Deborah A. Robinson dated August 13, 2019 (the "Minute Order"), pursuant to Rule 72(a) of the Federal Rules of Civil Procedure and LCvR 72.2(b).  The Minute Order denied Respondent's Motion for a Protective Order (the "Motion"), which sought a protective order staying further discovery against Respondent.  In the Motion, Respondent established that the discovery taken by Petitioners to date confirmed that Respondent maintains no assets in the United States that could be used under Rule 69 and the Foreign Sovereign Immunities Act ("FSIA") to satisfy this Court's judgment confirming a foreign arbitral award pursuant to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").  Respondent argued that, further, the Rule 26 balancing test prohibited as irrelevant and disproportionate the sweeping document discovery into the affairs of Respondent, a sovereign state, and its supposed instrumentalities, including Respondent's relationships and transactions with any entity in which it holds ownership interests.

This is a matter of first impression in this Circuit.  Although both the Supreme Court and the Circuit Court for the District of Columbia have intimated that Respondent's argument is correct, neither had the opportunity to decide the issue.  Nevertheless, the Magistrate Judge refused to entertain the argument, instead summarily denying the Motion and ordering the type of far-reaching discovery against a sovereign state and its supposed instrumentalities that courts have unanimously held to be improper.  Accordingly, as set forth below, this Court should vacate the August 13, 2014 Minute Order and grant the Motion, staying further discovery against Respondent in this case.

## SUMMARY OF GROUNDS FOR OBJECTIONS

In this matter, Petitioners purport to seek discovery in aid of executing this Court's March 23, 2018 judgment confirming a foreign arbitral award under the New York Convention. Pursuant to Rule 69(b), judgment creditors can pursue discovery "[i]n aid of the judgment or execution … as provided in these rules."  But, the FSIA places strict limits on the property of a sovereign that can be attached in execution of a judgment.  28 U.S.C. § 1609.  It is undisputed that Petitioners may only attach Kazakhstan's "property in the United States … used for a commercial activity in the United States."  *Id*. § 1610(a).  No other property is relevant to executing this Court's judgment.  For this reason, discovery not targeted at assets that can be attached is irrelevant under Rule 26.  As the Supreme Court has noted, "information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place." *Republic of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 144 (2014).  In addition to relevance, Rule 26(b) requires that discovery be "proportional to the needs of the case," including "whether the burden or expense of the proposed discovery outweighs its likely benefit."  Discovery requests that could not possibly lead to Respondent's property in the United States used for a commercial activity in the United States meet neither of these requirements.

Contrary to these limitations, Petitioners propounded excessively broad document discovery into the affairs of Respondent and its supposed instrumentalities anywhere in the world, and which further sought information regarding the relationships and transactions between Respondent and any entity in which it holds ownership interests.  Attachment of Respondent's foreign assets is not permitted by the FSIA.  This discovery – which is not calculated to lead to Respondent's property in the United States used for a commercial activity in the United States – is therefore irrelevant and outside the scope of proper discovery under Federal Rule 26(b).  So too is discovery into any assets belonging to third-party

2

"instrumentalities" that are separate legal entities against which Petitioners have no judgment and whose assets cannot be used to satisfy the judgment.  The vast majority of Petitioners' document discovery in this case is not aimed at assets capable of satisfying the judgment, and are therefore beyond the scope of Rule 26, Rule 69, and the FSIA.

The handful of requests for production that are aimed at Respondent's property in the United States used for a commercial activity in the United States cannot overcome the Rule 26 balancing test either, because discovery to date has established that Respondent maintains no such assets in the United States.  This reality was confirmed in Respondent's January 7, 2019 responses to Petitioners' interrogatories and requests for admission, wherein Respondent stated that it maintained no property in the United States used for a commercial activity in the United States.  It was further confirmed in the May 9, 2019 deposition of Mr. Kalymzhan Ibraimov, a senior government official in the best position to know of any Kazakh assets in the United States. It was confirmed again on June 19, 2019 by Almat Madaliyev, who testified on behalf of Respondent in a 30(b)(6) deposition.

Further confirming that Petitioners have no need for any extraterritorial discovery in this case is the undisputed fact that they have already attached approximately $6 billion overseas to satisfy their award of approximately $500 million. Petitioners have represented to other courts that these foreign attachments are "highly likely" to satisfy the arbitral award and, on the basis of this representation, Petitioners have obtained court approval to discontinue other foreign execution proceedings entirely.  Having made such representations – that further foreign execution proceedings are unnecessary because of their existing $6 billion in attachments – Petitioners cannot at the same time credibly represent to this Court that should be permitted to take foreign discovery.

Accordingly, Respondent's Motion sought to stay further discovery against Petitioner given that such discovery would be neither relevant nor proportional to the needs of the case. ECF 113.  Although Petitioners bore the burden of demonstrating the relevance of this discovery, they never even attempted to articulate how discovery into the affairs of a sovereign, which could not lead to attachable assets, would be relevant to satisfying this Court's judgment. Instead, they cited a Supreme Court decision, *NML Capital*, came in an inapposite context, and, in any event, strongly suggested that such discovery was indeed irrelevant under Rule 26.  *NML Capital* involved discovery in aid of a judgment issued in original proceedings directed to a third party bank, not a sovereign state.  In contrast, Petitioners seek further discovery against Respondent in aid of a judgment confirming a foreign arbitral award pursuant to the New York Convention.  Petitioners cited no case – and Respondent is not aware of any – permitting such discovery.  Indeed, such a holding would be at odds with the purpose of the New York Convention – to permit a party who obtains an arbitral award in one signatory country to enforce the award *where the award debtor has assets*.  Confirming that the New York Convention was not intended to use courts as clearinghouses for global discovery, United States courts regularly decline to exercise jurisdiction in New York Convention cases when arbitral award debtors lack assets in the jurisdiction in which award confirmation is requested.  The U.S. District Court for the District of Massachusetts similarly agreed on May 22, 2019 that Petitioners could not use these proceedings to take extraterritorial discovery against third parties given that the same issues were being determined abroad.

At the August 12, 2019 hearing, the Magistrate Judge denied the fully-briefed Motion without addressing any of Respondent's arguments.  *See* Declaration of Matthew H. Kirtland (hereinafter "Kirtland Decl."), attached hereto as <u>Exhibit A</u>, at Ex. 1 (transcript of August 12,

2019 hearing).  The Magistrate Judge provided no rationale for its decision to deny the Motion, other than to state summarily "that, simply put, there is no authority for it."  *Id*. at 28:24-29:3. The Magistrate Judge was operating under the misimpression that this Court had already ordered Respondent to comply with Petitioners' existing discovery requests, when in fact this Court made no such order.  In any event, Respondent has complied with four of Petitioners' five discovery requests – two depositions, requests for admission, and interrogatories.  Only Petitioners' excessively broad 182 documents requests remain outstanding. But, neither at the status hearing nor in the Minute Order did the Magistrate Judge ever address or consider Respondent's substantive arguments that this document discovery was not permitted by Fed. R. Civ. P. 26 because it is (a) irrelevant, as it is not targeted at executable assets; (b) unnecessary, given the fact that Petitioners had already attached nearly $6 billion in assets, which they believe to be "highly likely" to satisfy the judgment; and (c) unduly burdensome, in that it required a sovereign state protected by the FSIA to respond to staggeringly broad document requests.

In the end, the Magistrate Judge ordered Respondent to fully comply with Petitioners' 182 pending document requests in less than three months, without addressing the arguments of Respondent on burdensome and relevance.  *See* ECF 85 at 14-39; ECF 115 at 16-17.  And the Magistrate Judge did so despite the fact that the document requests called for the production of tens of millions of pages of documents, which, practically speaking, would take years to complete.  Kirtland Decl., Ex. 1 at 36:21-37:4.  The Minute Order thus failed to consider or apply Rule 26's balancing test in the context of this case, which requires that discovery in aid of execution pursuant to Rule 69 be directed at assets that can be attached to satisfy this Court's judgment under the FSIA.

## **LEGAL STANDARD**

In denying Respondent's Motion and entering the Minute Order, the Magistrate Judge made no factual findings. As a result, there is nothing for this Court to review for clear error. *See Am. Ctr. for Civil Justice v. Ambush*, 794 F. Supp. 2d 123, 129 (D.D.C. 2011) (holding that factual determinations and discretionary decisions of a magistrate judge are reviewed for clear error). This Court is required to review *de novo* "any asserted misapplication of the relevant statutes, case law, and rules of procedures" by the Magistrate Judge under the "contrary to law" standard. *U.S. v. All Assets Held at Bank Julius, Baer & Co., Ltd.*, 233 F. Supp. 3d 143, 147-48 (D.D.C. 2017). "This *de novo* review includes any factual findings underlying the magistrate judge's analysis of the claims." *Intex Recreation Corp. v. Team Worldwide Corp.*, 42 F. Supp. 3d 80, 86 (D.D.C. 2013).

Under Rule 69(a), a judgment creditor may only pursue discovery "[i]n aid of [a] judgment or execution … as provided in these rules." Rule 26(b)(1) limits discovery to information:

> that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

The party seeking the disclosure of information "bears the initial burden of explaining how the requested information is relevant." *Jewish War Veterans of the U.S. of Am., Inc. v. Gates*, 506 F. Supp. 2d 30, 42 (D.D.C. 2007). A court "must limit the frequency or extent of discovery … if it determines that … the discovery sought is unreasonably cumulative or duplicative." Fed. R. Civ. P. 26(b)(2)(C).

Rule 26(c) provides that a court may, for good cause and to protect a party from undue burden and expense, issue a protective order that "certain matters not be inquired into, or that the scope of the disclosure or discovery be limited to certain matters." *United States v. Sci. Applications Int'l Corp.*, 04-cv-1543, 2006 WL 8435222, at *4 (D.D.C. Feb. 28, 2006).  A court possesses broad discretion in issuing a protective order and in determining what degree of protection is required.  *Id.*  "[Rule 69 discovery] is not unlimited, and must be kept pertinent to the goal of discovering concealed assets of the judgment debtor and not be allowed to become a means of harassment of the debtor or third persons." *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 231-32 (E.D. Pa. 2014) (quotations omitted).  The decision to limit or deny discovery by means of a Rule 26 protective order requires the court to balance "the requester's need for the information from this particular source, its relevance to the litigation at hand, the burden of producing the sought-after material; and the harm which disclosure would cause to the party seeking to protect the information." *Burka v. Dep't of Health and Human Servs.*, 87 F.3d 508, 517 (D.C. Cir. 1996).

The FSIA confers two independent types of immunities on sovereign governments.  First, sovereigns have jurisdictional immunity that prevents them from being sued in the United States except in enumerated circumstances.  28 U.S.C. § 1605(a)(6).  Second, the FSIA provides that sovereigns "*shall be immune* from attachment arrest and execution" except in enumerated circumstances.  *Id.* § 1609 (emphasis added).  "This section codifies the longstanding common-law principle that a foreign state's property in the United States is presumed immune from attachment." *Rubin v. The Islamic Republic of Iran*, 637 F.3d 783, 785 (7th Cir. 2011).  Sovereign immunity "aim[s] to protect foreign sovereigns from the burdens of litigation, including the cost and aggravation of discovery."  *Id.* at 795 (citing cases).  Discovery should be

permitted only circumspectly to avoid an unnecessary burden to the sovereign.  *See, e.g.*, *id*. at

796 ("Discovery orders that are broad in scope and thin in foundation unjustifiably subject

foreign states to unwarranted litigation costs and intrusive inquiries about their American-based

assets."); *In re Papandreou*, 139 F.3d 247, 251 (D.C. Cir. 1998) ("Sovereign immunity is an

immunity from trial and the attendant burdens of litigation, and not just a defense to liability on

the merits.") (quotations omitted); *First City, Texas-Houston, N.A. v. Rafidain Bank,* 150 F.3d

172, 176 (2d Cir. 1998) ("[In the FSIA context,] discovery should be ordered circumspectly and

only to verify allegations of specific facts crucial to an immunity determination.") (quotations

omitted).  This is particularly true for attachment immunity, which is even stricter than

jurisdictional immunity.  *See NML Capital*, 573 U.S. at 142 (holding that the exceptions to

attachment immunity are "narrower" than those to jurisdictional immunity).  The "settled

principle" that attachment immunity is stricter than jurisdictional immunity "is both well

established and based on a critical diplomatic reality: Seizing a foreign state's property is a

serious affront to its sovereignty—much more so than taking jurisdiction in a lawsuit.

Correspondingly, judicial seizure of a foreign state's property carries potentially far-reaching

implications for American property abroad."  *Rubin v. Islamic Republic of Iran*, 830 F.3d 470,

480 (7th Cir. 2016).

The FSIA provides that the "property in the United States of a foreign state … used for a

commercial activity in the United States, shall not be immune from attachment in aid of

execution, or from execution, upon a judgment issued by a court of the United States or of a

State," if one of seven further conditions is satisfied.[1]  *Id*. § 1610(a).  Accordingly, under the

---

[1]    One such further condition is if "the judgment is based on an order confirming an arbitral award
rendered against the foreign state, provided that attachment in aid of execution, or execution, would
not be inconsistent with any provision in the arbitral agreement." *Id.* §1610(a)(6).

FSIA, only property of Respondent located in the United States and used for a commercial activity in the United States can potentially be attached to satisfy this Court's judgment. *See Foremost-McKesson, Inc. v. Islamic Republic of Iran*, 905 F.2d 438, 449 (D.C. Cir. 1990). Furthermore, the "property must be in the United States when the district court authorizes execution" for it to be attachable under the FSIA. *FG Hemisphere Assocs., LLC v. Republique du Congo*, 455 F.3d 575, 589 (5th Cir. 2006).

Courts have repeatedly limited discovery into assets that could not be attached under the FSIA. *See*, *e.g.*, *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, 924 F. Supp. 2d 508, 513 (S.D.N.Y. 2013) (allowing judgment creditors to pursue discovery so long as there was a "nexus to U.S. assets used for a commercial purpose"); *Cont'l Transfert Technique Ltd. v. Fed. Gov't of Nigeria*, 308 F.R.D. 27, 37 (D.D.C. 2015) (holding that Rule 30(b)(6) notice to a sovereign was not overbroad because "[n]one of the areas of inquiry outlined in Continental's notice, on their face, appear to be directed at property or assets that would be categorically immune from execution under the FSIA. Indeed, Continental seeks, in its notice, only information about Nigeria's property, assets, transactions, or investments which are used for commercial activities and which are located, or undertaken, in the United States."); *Leibovitch v. Islamic Republic of Iran*, 297 F. Supp. 3d 816, 832 (N.D. Ill. 2018) ("Plaintiffs are entitled to conduct discovery reasonably calculated to locating assets that may be subject to attachment.").

In *Rubin*, the plaintiffs obtained a default judgment in this District against Iran for claims relating to a terrorist attack, and then registered the judgment in the Northern District of Illinois to attach a collection of ancient artifacts that Iran had loaned to museums in Chicago. 637 F.3d at 786. In addition to requests targeted at the collection of artifacts, the plaintiffs served Iran with document requests regarding all its assets in the United States as well as a Rule 30(b)(6)

notice to depose an officer or agent designated by Iran "to testify on its behalf regarding its assets in the United States," and the district court granted plaintiffs' motion to compel this "general-asset" discovery. *Id*. at 788. On appeal, the Seventh Circuit held that under the FSIA, "property of a foreign state in the United States is *presumed* immune from attachment and execution." *Id*. at 796 (emphasis original). However, by giving "the plaintiffs a 'blank check' entitlement to discovery regarding *all* Iranian assets in the United States," the district court improperly "turn[ed] this presumptive immunity on its head." *Id*. In order to comply with the FSIA, the court held that "a plaintiff seeking to attach the property of a foreign state in the United States must identify the specific property that is subject to attachment and plausibly allege that an exception to § 1609 attachment immunity applies. If the plaintiff does so, discovery in aid of execution is limited to the specific property the plaintiff has identified." *Id*. at 798-99.

In *Walters v. People's Republic of China*, the plaintiffs obtained a default judgment against the People's Republic of China in a product liability action, and then served subpoenas against third-party banks that sought information in the banks' possession regarding China's foreign assets. 672 F. Supp. 2d 573, 575 (S.D.N.Y. 2009). During briefing and oral argument, the plaintiffs clarified that they were only interested in property "held by the Banks outside of the United States" because "such property falls outside of the scope of the FSIA." *Id.* at 574. There, the court quashed the subpoenas, noting that the FSIA only allowed attachment of "[t]he property in the United States of a foreign state." *Id*. at 574-75 (quoting 28 U.S.C. § 1610(a)). "Because assets held outside of the U.S. fall outside of the exception to sovereign immunity provided by the FSIA and the FSIA is the sole basis for obtaining jurisdiction against a foreign sovereign," the court granted the motion to quash the discovery. *Id*. Although the petitioners did

not appeal that decision, the Second Circuit positively cited the decision in a later phase of the case.  It explained, petitioners "sought information pertaining to China's assets *outside* of the United States, which were held to be categorically immune from execution under the FSIA. Nothing in that ruling … prevents them from pursuing Rule 69 discovery from the Banks as to China's potentially recoverable assets held *within the United States*."  *Walters v. Indus. & Commercial Bank of China, Ltd.*, 651 F.3d 280, 297 (2d Cir. 2011) (citations omitted, emphasis added).

In *FG Hemisphere Associates, LLC v. Democratic Republic of Congo*, the D.C. Circuit considered a finding of contempt by the district court against the Democratic Republic of Congo for its failure to respond to court-ordered discovery.  The United States, as amicus, argued that "discovery order [was] overbroad because it seeks information on property that is not subject to attachment or execution under the FSIA—indeed it reaches property beyond the United States, outside of the district court's jurisdiction."  637 F.3d 373, 379 (D.C. Cir. 2011).  Although the D.C. Circuit noted that the argument was "serious[]," it found that it "simply [could not] entertain [the] argument because it was not raised before the district court[,]" nor was it raised on appeal.  *Id.*  However, the court did note that "[i]f the DRC were to comply with the discovery order regarding property in the United States, the district court might modify the contempt order."  *Id.* at n. 3; *see also Stern v. Islamic Republic of Iran*, 73 F. Supp. 3d 46, 51 (D.D.C. 2014) (denying discovery into debtor's assets held by non-profit corporation that managed certain domain names and performed related functions because the assets  could not properly be attached as a matter of law); *accord Cont'l Transfert Technique Ltd.*, 308 F.R.D. at 37 (allowing discovery when the plaintiff sought "only information about Nigeria's property, assets,

11

transactions, or investments which are used for commercial activities and which are located, or undertaken, in the United States").

The Supreme Court has also questioned the propriety of allowing **third-party** discovery into foreign assets that cannot be attached to satisfy a judgment.  In *NML Capital*, which did not involve enforcement of a foreign arbitral award under the New York Convention but rather enforcement of an original judgment of the U.S. District Court for the Southern District of New York, the district court permitted limited discovery directed to a third-party bank relating to assets outside the United States of the defendant foreign sovereign (Argentina).  573 U.S. 134 (2014).

On appeal, the Second Circuit held that "because the Discovery Order involves discovery, not attachment of property, and because it is directed at third-party banks, not at Argentina itself, Argentina's sovereign immunity is not infringed." *EM Ltd. v. Republic of Argentina,* 695 F.3d 201, 205 (2d Cir 2012). The court  explicitly stated that "[t]he second principal reason for holding that the Discovery Order does not infringe on Argentina's sovereign immunity is that the subpoenas at issue were directed at BOA and BNA – commercial banks that have no claim to sovereign immunity, or to any sort of immunity privilege. Thus, the banks' compliance with subpoenas will cause Argentina no burden and no expense." *Id.* at 210.

On further appeal to the Supreme Court, Argentina only raised the "single, narrow question" of whether the text of the FSIA alone barred such extraterritorial post-judgment discovery from a third party.  *NML Capital*, 573 U.S. at 140.  The Supreme Court held that the text of the FSIA had no such bar.  *Id.*  The Court, however, expressly reserved judgment on the question of whether such third-party discovery satisfied the balancing test required by Rule 26, since Argentina never raised this issue.  According to the Court, the scope of Rules 26 and 69

12

were "much discussed at oral argument," including (i) what discovery is permissible "if the assets targeted by the discovery request are beyond the jurisdictional reach of the court to which the request is made," and (ii) whether a court may "permit discovery so long as the judgment creditor shows that the assets are recoverable under the laws of the jurisdictions in which they reside, whether that be Florida or France." *Id*. at 139.  However, because the sovereign "has not put [these issues] in contention" in the appeal, the Court did not decide these issue.  Instead, it "assume[d] without deciding that...in a *run-of-the-mill* execution proceeding...the district court would have been within its discretion to order the discovery from *third-party banks* about the judgment debtor's assets located outside the United States." *Id*. at 139-40 (quotations omitted, emphasis added).  It nevertheless cited approvingly the district court's efforts to "limit the subpoenas to discovery that was reasonably calculated to lead to attachable property." *Id*. at 138.  The Court also explained that "*information that could not possibly lead to executable assets is simply not 'relevant' to execution in the first place*" under Rule 26 and therefore would be improper.  *Id*. at 144-45 (emphasis added).

Judgment creditors also cannot execute against the debt of a sovereign by attaching the assets of its legally distinct instrumentalities.  *See De Letelier v. Republic of Chile*, 748 F.2d 790, 794 (2d Cir. 1984) (holding that a judgment creditor could not attach the assets of a sovereign's state-owned airlines to satisfy the judgment against the sovereign).  In *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba* ("Bancec"), Citibank sought to offset a debt owed to Bancec, an instrumentality of the Cuban government, with money that Cuba owed to Citibank for expropriating Citibank's assets after the 1959 revolution.  462 U.S. 611 (1983).  The Supreme Court, however, held that "government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." *Id*. at 626-27.

13

To hold otherwise would frustrate "the efforts of sovereign nations to structure their governmental activities in a manner deemed necessary to promote economic development and efficient administration" and thereby offend "principles of comity between nations." *Id*. at 626.

Based on these principles of comity, the Supreme Court adopted a "presumption of independent status" for instrumentalities. *Id*. at 627. This "*Bancec* presumption" is not to be taken lightly. The presumption is "strong," and "both *Bancec* and the FSIA legislative history caution against too easily overcoming the presumption of separateness." *Arch Trading Corp. v. Republic of Ecuador*, 839 F.3d 193, 201 (2d Cir. 2016) (quotations omitted). The *Bancec* presumption "gives way only if a foreign corporate entity is so extensively controlled by its owner that a relationship of principal and agent is created, or when broader equitable principles dictate that separate treatment would work fraud or injustice." *GSS Grp. Ltd v. Nat'l Port Auth.*, 680 F.3d 805, 814 (D.C. Cir. 2012) (citations omitted, quotations omitted). A judgment creditor must show that the sovereign exercises such extraordinary control over its instrumentality that they are "not meaningfully distinct entities" but instead "act as one." *Transamerica Leasing, Inc. v. La Republica de Venezuela*, 200 F.3d 843, 848 (D.C. Cir. 2000). A corporate entity is so "extensively controlled" by the sovereign when either the sovereign (a) "significantly exceeds the normal supervisory control exercised by any corporate parent over its subsidiary and, indeed, amounts to complete domination of the subsidiary"; or (b) "exercises its control in such a way as to make the instrumentality its agent." *Id.* at 848-49. "A sovereign does not create an agency relationship merely by owning a majority of a corporation's stock or by appointing its Board of Directors," since then the "presumption of separateness announced in *Bancec* would be an illusion." *Id*. at 849. The D.C. Circuit, for example, found that the presumption of separateness was not overcome even though the sovereign owned most of an instrumentality's stock,

14

appointed its Board, was involved in its day-to-day operations, and aided it financially. *Id.* at 850-51.

Even if the FSIA confers jurisdiction over a sovereign, that does not mean it affords judgment creditors a right of discovery. Indeed, courts have recognized that, at times, the FSIA creates a right to jurisdiction over a foreign state without an actual remedy of execution. *See Exp.-Imp. Bank of the Republic of China v. Grenada*, 768 F.3d 75, 84 (2d Cir. 2014) (holding that immunity from execution "can, in some cases, still render the grant of jurisdiction under the FSIA entirely ineffectual, essentially providing a 'right without a remedy.'") (quoting *De Letelier*, 748 F.2d at 798). This is necessary because "[t]he judicial seizure of the property of a friendly state may be regarded as an affront to its dignity and may ... affect our relations with it." *Republic of Philippines v. Pimentel*, 553 U.S. 851, 866 (2008) (quotations omitted). Because of these comity considerations, "Congress fully intended to create rights without remedies, aware that plaintiffs would often have to rely on foreign states to voluntarily comply with U.S. court judgments." *Peterson v. Islamic Republic Of Iran*, 627 F.3d 1117, 1127-28 (9th Cir. 2010).

## **RELEVANT BACKGROUND**

On March 23, 2018, this Court confirmed Petitioners' 2013 arbitral award after denying Respondent's request for leave to present evidence that the award had been obtained by fraud. ECF 69, 70.[2] One month after the entry of the judgment, on April 23, 2018, Petitioners moved

---

[2] The English High Court, in a June 6, 2017 decision, held that Kazakhstan had presented a "*sufficient prima facie case*" that the Petitioners had obtained the 2013 arbitral award by fraud and further held that the interests of justice required that Kazakhstan's fraud allegations be "examined at trial and decided on their merits." Kirtland Decl. ¶ 4. A copy of this judgment is reported at 2017 EWHC 1348 (Comm), and can be found online at http://www.bailii.org/ew/cases/EWHC/Comm/2017/1348.html. In response, Petitioners voluntarily dismissed their English enforcement proceedings on the back of the below-referenced representation to the English Court that further enforcement proceedings were not necessary because of their existing $6 billion in attachments in their ongoing Swedish, Netherlands, Belgium and Luxembourg enforcement proceedings. *Id.* ¶ 5. Such attachments remain in place to date. *Id.* Substantive hearings are scheduled on Kazakhstan's fraud allegations on August 27, 2019 in the

this Court for an order permitting them to begin executing the judgment pursuant to 28 U.S.C.

§ 1610(c) and to register the judgment in any other judicial district of the United States.  ECF 73.

On May 1, 2018, Petitioners propounded three forms of discovery on Respondent.

Specifically, they served a set of 182 document requests and two deposition notices, including a

Rule 30(b)(6) deposition that listed 18 topics.  Kirtland Decl., Exs. 2-4.  Not one of Petitioners'

182 document requests was properly limited to assets that potentially could be attached under the

FSIA.  Only 18 of the requests specifically seek information on assets located within the United

States, and those are not limited to commercial assets.  Eighteen of the remaining requests

demand information *solely* regarding extraterritorial issues, including any letters of credit, bank

accounts, debts, or commercial transactions outside the United States.  Kirtland Decl., Ex. 2 at

26-45 (topics 19-36).  The bulk of the remaining requests seek information regarding *inter alia*

assets, debts, securities, goods, payments, interests, transactions, and sales anywhere in the

world, regardless of where they are located.  *Id*. at 19-44 (requests 37-182).  In addition, 142 of

the 182 requests seek information on what Petitioners define as Respondent's

"instrumentalities."  *Id*. at 12-44 (requests 2, 4, 6, 8-9, 11, 13, 15-18, 20, 22, 24, 26-27, 29, 31,

33-53, 57-64, 69-72, 74-91, 100-158, 160-61, 165, 167, 169, 174-82).  Petitioners broadly define

"instrumentality" as "any entity that the [Kazakhstan] government owns, controls or has a

beneficial interest in, in whole or in part, directly or indirectly," including a list of 25 entities that

Petitioners claim to be instrumentalities.  *Id*. at 8-9.  In its responses and objections to the

document requests, Respondent objected to this definition on several grounds, including that it is

vague, unduly burdensome, and not calculated to lead to the discovery of any admissible

evidence.  Kirtland Decl., Ex. 5 at 5.  It also objected to any request that sought information that

---

Netherlands proceedings, on October 10, 2019 in the Luxembourg proceedings and on November 13, 14
and 15 in the Belgium proceedings.  *Id.* ¶ 6.

was not relevant "given the limitations imposed by the Foreign Sovereign Immunities Act." *Id*. at 3.

With regard to Petitioners' Rule 30(b)(6) notice, seven of the 18 topics explicitly request information *solely* regarding extraterritorial issues.  Kirtland Decl., Ex. 3 at 15-26 (topics 9-15). Eleven topics seek information regarding assets of Respondent's supposed instrumentalities.  *Id*. at 6-30 (topics 2, 5, 7, 8, 10, 13-18).  Not a single deposition topic was specifically aimed at discovering assets in the United States related to commercial activity in the United States, as required for potential attachment under the FSIA.  Respondent timely objected to these topics on the basis of relevance, undue burden, and other grounds.  Kirtland Decl., Ex. 6 at 2, 4-5.

In violation of LCvR 7(m), Petitioners moved to compel responses to their deposition notices and document requests on July 19, 2018.  ECF 81; ECF 85 at 2-6.  Respondent subsequently opposed this motion and affirmatively moved for a protective order and a stay of execution on August 6, 2018.  ECF 83, 85, 86.  The motion for a stay was based, in part, on the fact that Petitioners had already fully secured their judgment many times over in European proceedings.  In four jurisdictions – Belgium, Luxembourg, Sweden and the Netherlands – Petitioners have levied attachments worth more than $5.92 billion to enforce their $500 million award.  *See* ECF 83-1 at 3-8.

Petitioners have conceded that the amount of their arbitral award has been fully secured. In fact, in England, Petitioners voluntarily discontinued their proceedings to enforce the award because, they represented to the English court, *there was no need for them*, given the fact that they had attached in excess of $6 billion in their ongoing enforcement proceedings in Sweden, the Netherlands, Luxembourg and Belgium and, therefore, "enforcement measures outside the jurisdiction are *highly likely* to satisfy" the arbitral award.  Kirtland Decl. ¶ 5.

This Court denied Respondent's motion for a stay of execution on the judgement, but it did not resolve "the parties' disputes over the breadth, vagueness, and relevance of the discovery requests and whether they are unduly burdensome."  ECF 91.  The Court referred these issues to the Magistrate Judge.  ECF 97.

On November 13, 2018, this Court held that a reasonable period of time had elapsed since the judgment such that Petitioners could attempt to execute on it pursuant to 28 U.S.C. § 1610(c).  ECF 91 at 2.  But it denied Petitioners' request to register its judgment in other judicial districts in the United States.  *Id*.  The Court held that Petitioners needed to show good cause to register the judgment outside the District of Columbia because the judgment had not become final on appeal.  *Id*. at 7 (citing 28 U.S.C. § 1963).  Petitioners, however, failed to show good cause because they had not taken any steps to establish that Respondent lacked sufficient assets to satisfy the judgment in the District of Columbia or that it had "substantial assets in other forums."  *Id*. (quoting *Chevron Corp. v. Republic of Ecuador*, 987 F. Supp. 2d 82, 84-85 (D.D.C. 2013)).

Petitioners subsequently propounded additional discovery to address these issues on December 4, 2018.  Specifically, they issued requests for admission that asked Respondent whether it maintained "non-diplomatic, non-military" property in the District or elsewhere in the United States.  Kirtland Decl., Ex. 7 at 4.  Petitioners also requested that Respondent admit that two third parties to these proceedings – the National Fund of the Republic of Kazakhstan (the "National Fund") and Samruk-Kazyna JSC – maintained property in the United States.  *Id*.  In corresponding interrogatories served the same day, Petitioners asked Respondent to identify any such property that it admitted to maintaining in this District and in other judicial districts in the United States.  Kirtland Decl., Ex. 8 at 4.

On December 20, 2018, the Magistrate Judge held a hearing regarding Petitioners'

motion to compel and Respondent's motion for a protective order.  Petitioners admitted that their

discovery requests were "concededly broad" and could be narrowed.  Kirtland Decl, Ex. 9 at

6:16-18.  They also informed the Magistrate Judge that they would be "happy to" narrow the

requests.  *Id*. at 27:14-18.  The Magistrate Judge denied both motions without prejudice but

ordered a step-by-step process in which Petitioners could first take the deposition of a Kazakh

government official whom Petitioners had noticed.  ECF 99.  The Magistrate Judge further

ordered the parties, upon completion of the deposition, to meet and confer and then file a status

report "regarding the need for further discovery."  *Id*.

Respondent has fully complied with the step-by-step discovery process ordered by the

Magistrate Judge – consisting of Petitioners' December 2018 written discovery requests and its

depositions of two senior Kazakh government officials, including a Rule 30(b)(6) deposition.

The substantial discovery provided by Respondent in these steps has confirmed that Respondent

maintains no potentially attachable assets in the United States.

First, on January 7, 2019, Respondent timely responded to the interrogatories and

requests for admission that Petitioners served in December 2018.  Therein, Respondent

confirmed that it did not possess any potentially attachable property in the United States, i.e.,

properly in the United States being used for commercial activity in the United States.  Kirtland

Decl, Ex. 10 at 4-5; *id.*, Ex. 11 at 5.

Second, on January 18, 2019, in lieu of the deponent that Petitioners had noticed, who

was no longer in Respondent's employ or in the United States, Respondent volunteered a

substitute deponent – Mr. Kalymzhan Ibraimov – a senior government official in the best

position to know of any Kazakh assets in the United States.  ECF 102 at 5-6.  For a period of

19

more than ten weeks, Petitioners did nothing, waiting until April 3, 2019, to communicate that they wanted to proceed with the offered deposition.  ECF 105.  On May 9, 2019 – a mutually agreed-upon date – Petitioners took the deposition of Mr. Ibraimov, who traveled from Kazakhstan to the United States specifically for the deposition.  Mr. Ibraimov is the Deputy Chair of the Committee for State Property and Privatization in the Kazakh Ministry of Finance, which oversees assets belonging to Respondent, including its shareholding interests in a series of approximately 130 joint stock companies.  Kirtland Decl., Ex. 12 at 14:24-15:6, 16:2-4, 20:7-14. As part of its purview, the Committee also maintains a comprehensive registry of assets belonging to Respondent and to the joint stock companies.  *Id*. at 40:2-23.  The Committee also manages a process in which certain of Respondent's assets are being privatized.  *Id*. at 14:24-15:6, 16:2-4, 20:7-14.  In his role as Deputy Chairman of the Committee, Mr. Ibraimov had broad knowledge regarding the assets of Respondent and the joint stock companies.

In his testimony, Mr. Ibraimov confirmed the absence of any attachable real property or equities belonging to Respondent in the United States.  *Id*. at 39:21-40:23, 48:6-49:15; 53:23-54:5; 70:6-71:10.  Mr. Ibraimov testified that the supposed "instrumentalities" about which Petitioners sought information are separate legal entities from Respondent, which "doesn't get involved into the operational activity" of any such third parties, but instead "only supports the rights of the shareholders."  *Id.* at 18:10-20:14.

Third, on May 31, 2019, at a further status hearing, the Magistrate Judge ordered the Rule 30(b)(6) deposition requested by Petitioners to proceed but, based on Respondent's argument, it limited the topics of deposition to United States assets only.  ECF 107.[3]  Accordingly,

---

[3] Petitioners misrepresented Mr. Ibraimov's testimony in a status report filed on May 24, 2019.  Despite his extensive knowledge regarding the absence of Respondent's assets in the United States, Petitioners asserted that he had "limited knowledge about such assets."  ECF 106 at 3.  And, rather than informing the Court of the significant areas of Mr. Ibraimov's expertise and the testimony regarding the absence of attachable assets, Petitioners instead

Respondent produced its Rule 30(b)(6) witness, Almat Madaliyev, to testify on the topics set forth in the notice, as limited by the Magistrate Judge's Order.  The deposition took place on an agreed date and location – June 19, 2019 in London, England. Mr. Madaliyev, the Deputy Minister of Justice of the Republic of Kazakhstan, testified that he researched the noticed topics personally and through his staff in advance of the deposition.  Kirtland Decl., Ex. 13 at 20:17-25, 25:12-27:22, 31:19-32:2.  Specifically, he and his staff performed legal research and gathered information from officials at the Ministry of Finance, Ministry of Energy, Ministry of Justice, and other entities.  *Id.*  Each of the Rule 30(b)(6) topics asked the witness to identify "[a]ll Persons with knowledge of, or in possession, custody or control of Documents" relating to various topics, with a date range of January 1, 2013 to the present.  Kirtland Decl., Ex. 3.  Mr. Madaliyev testified that Kazakhstan maintains no attachable assets in the United States.  That included no bank accounts, no commercial transactions, no debt to anyone in the United States, and no hydrocarbon contacts involving Respondent relating to the sale of products to the United States.  Kirtland Decl., Ex. 13 at 54:19-55:10, 57:17-58:21, 92:18-95:8, 131:11-13, 134:4-12, 149:3-8, 151:22-25.  Mr. Madaliyev also filled in any gaps of information that Petitioners claimed remained after Mr. Ibraimov's testimony.  Mr. Madaliyev testified that Respondent maintained no escrow accounts (*id.* at 126:16-25) or brokerage accounts (*id.* at 57:17-58:21), and it had not engaged in any commercial activities, in the United States (*id.* at 92:18-19, 93:25-94:5).

The substantial discovery provided by Respondent has confirmed that it maintains no property in the United States which Respondent could attempt to attach under the FSIA.

---

focused entirely on a few categories of assets that were outside of his knowledge.  *Id.*  They specifically mentioned "escrows, retainers, brokerage accounts, and assets held by the ROK in connection with the repayment of its sovereign debt and/or commercial transactions."  *Id.*

Petitioners have also sought discovery from a series of third parties regarding assets belonging either to Respondent or to different supposed instrumentalities.  For example, without complying with Rule 45(a)(4)'s notice provisions, Petitioners served subpoenas *duces tecum* and *ad testificandum* on third parties State Street Corporation and Bank of New York Mellon Corp. on February 8, 2019 and April 11, 2019, respectively.  Kirtland Decl., Exs. 14-15.  On May 22, 2019, the District Court for the District of Massachusetts granted State Street's motion to stay compliance with Petitioners' subpoenas given that the subject matter in those subpoenas was already being adjudicated in ongoing proceedings in Europe.  Kirtland Decl., Ex. 16 (*State Street Corp. v. Anatolie Stati, et al.*, Civil Action No. 19-mc-91107 (D. Mass), ECF 44).

Petitioners have also initiated seven different proceedings pursuant to 28 USC § 1782 seeking information on Respondent's assets or those of supposed instrumentalities.  *See Stati, et al. v. Bank of New York Mellon Corporation*, No. 14-mc-00425 (S.D.N.Y. 2014); *Stati, et al. v. BNP Paribas Asset Management, Inc. et al.*, No. 15-mc-00051 (S.D.N.Y. 2015); *Stati, et al. v. ABN AMRO Holdings USA LLC*, No. 15-mc-00052 (S.D.N.Y. 2015); *Stati, et al. v. State Street Corporation*, No. 1:15-mc-91059 (D. Mass. 2015); *Stati, et al. v. Union Bancaire Privee Asset Management LLC*, No. 18-mc-00077 (S.D.N.Y. 2018); *Stati, et al. v. Amundi Investments USA*, No. 18-mc-00078 (S.D.N.Y. 2018); *Stati, et al. v. Euroclear Bank*, No. 18-mc-00079 (S.D.N.Y. 2018).

None of this third-party discovery has identified any property of Respondent in the United States, whether being used for a commercial activity in the United States, or otherwise.

Respondent filed its Motion for a Protective Order on July 16, 2019, two days before a previously scheduled status hearing.  ECF 113.  The Magistrate Judge postponed that hearing until August 12, 2019, and set a briefing schedule under which Petitioners would file an

opposition on July 31, 2019 and Respondent would file its reply on August 7, 2019.  *See* July 17, 2019 Minute Order.  The parties complied with this briefing schedule.

At the August 12, 2019 hearing, the Magistrate Judge did not address any of the legal issues raised in the Motion.  When counsel for Respondent began explaining that the scope of discovery should be limited to the assets that Petitioners could actually attach to satisfy the judgment, the Magistrate Judge cut off the argument, stating that "[t]here is no issue before me regarding where and under what circumstances the judgment can be executed."  Kirtland Decl., Ex. 1 at 14:15-21.  The Magistrate Judge then proceeded to deny Respondent's Motion, stating (incorrectly) that "there is no authority for it."  *Id*. at 28:24-29:3.

During the hearing, the Magistrate Judge did not resolve the parties' numerous disputes as to the scope of the Petitioners' one outstanding item of discovery – the 182 document requests.  *Id*. at 2:12-3:15; 5:25-17:7.  What appeared to be animating the Magistrate Judge's decision was a misunderstanding of this Court's direction – or lack of direction – regarding the scope of discovery in this case.  At the August 12, 2019 status hearing, the Magistrate Judge repeatedly referenced this Court's "orders" that discovery should proceed regardless of any arguments that Respondent made regarding the scope, burden and relevance of such discovery, despite the fact that this Court made no such orders and, to the contrary, expressly referred such questions to the Magistrate Judge in the first instance.  *See*, *e.g.*, *id*. at 6:5-7 (referring to the purported "Courts' expectations – and I mean the Courts plural, Judge Jackson and this Court – requiring that discovery proceed"), 15:18-21 ("Are you suggesting that Judge Jackson didn't know that [there were no executable assets in the United States to satisfy the judgment] when she ordered that discovery should proceed and that discovery disputes would be referred to a magistrate judge, in this instance, me?").

23

This Court, however, never made any orders regarding discovery.  Rather, on November 13, 2018, it held that Respondent had not met the "stringent standards" for staying execution pending appeal in the absence of a supersedeas bond, and it referred pending discovery motions – Petitioners' motion to compel and Respondent's motion for a protective order – to the Magistrate Judge for resolution.  ECF 91 at 2, 9.  As the Court indicated in making that referral, "[w]hat remains to be resolved are the parties' disputes over the *breadth*, *vagueness*, and *relevance* of the discovery requests and whether they are *unduly burdensome*.  The Court directs the parties to meet and confer in an effort to narrow the areas of dispute, and any matters that cannot be resolved will be referred to a Magistrate Judge for decision."  *Id.* at 9 (emphasis added).

Since that Order, Respondent has provided substantial discovery to Petitioners, including the above-reference written discovery responses and two full depositions.

At the end of the August 12, 2019 hearing, the Magistrate Judge asked counsel for Respondent how much time would be reasonable for Respondent to fully comply with Petitioners' 182 document requests.  Kirtland Decl., Ex. 1 at 36:21-37:4.  Counsel for Respondent responded that it would take "[p]robably in the order of one to two years" to comply because it would involve the production of "tens of millions of pages of paper."  *Id.*  The Magistrate Judge then established a schedule in which Respondent would be required to produce the requested documents in 89 days, by November 8, 2019.  *See* Minute Order.  The Magistrate Judge also ordered the parties to meet and confer to attempt to narrow the documents requests by August 30.  *Id.*  The Magistrate Judge also offered to wait while the parties met for 30 minutes to narrow the requests, but counsel for Petitioners declined the offer because "the document request

is quite lengthy" and therefore a 30-minute conferral would not "be sufficient time for us to make any significant headway." *Id.* at 29:7-30:9.

## ARGUMENT

### I.      Petitioners Are Not Entitled to Non-U.S. Discovery

Any discovery that is not calculated to lead to "any property in the United States" of Kazakhstan "used for a commercial activity in the United States" is both irrelevant to execution of the judgment and not proportional to the needs of the case. *See* 28 U.S.C. §1610(a); Fed. R. Civ. P. 26; *EM Ltd. v. Republic of Argentina*, 473 F.3d 463, 486 (2007) (denying discovery into funds that "were never an attachable asset of the Republic"); *see also E.I. DuPont de Nemours & Co. v. Kolon Indus., Inc.*, 286 F.R.D. 288, 292 (E.D. Va. 2012) ("[A]sset discovery should be tailored to the specific purpose of enabling a judgment creditor to discover assets upon which it can seek to execute a judgment and … the judgment debtor's discovery should not devolve into a fishing expedition for irrelevant or cumulative information which does not advance that purpose.").

Petitioners confirmed this when in their Petition to Confirm they represented to this Court that the purpose of these proceedings was to obtain a United States judgment that Petitioners could attempt to enforce *in the United States* against any assets of Respondent *in the United States* that are *used for commercial purposes in the United States*. *See* ECF 1 (Petition to Confirm) ¶ 46 ("Upon information and belief, the ROK and its instrumentalities and agents maintain assets in the United States, and those assets are and have been used for commercial purposes in the United States and may be executed upon in satisfaction of any judgment entered in Petitioners' favor herein."). Having made this representation, Petitioners cannot now claim that they are entitled to discovery into the worldwide affairs of Respondent and it alleged instrumentalities.

Despite this, Petitioners' further discovery requests are improperly aimed at non-U.S. affairs of Respondent and its supposed instrumentalities.  Ninety percent of Petitioners' document requests (*i.e.*, 164 out of 182) seek non-U.S. information, and only eight of their 18 Rule 30(b)(6) topics are targeted to the U.S.  Kirtland Decl., Ex. 2 at 15-44; *id.*, Ex. 3 at 16-26. The discovery sought regarding Respondent's non-U.S. affairs is irrelevant because such discovery cannot lead to assets that Petitioners could even attempt to attach in execution of this Court's judgment.

Although the party seeking disclosure bears the burden of explaining how the requested information is relevant, Petitioners made no such attempt here.  *Jewish War Veterans*, 506 F. Supp. 2d at 42.  In neither their opposition brief to Respondent's Motion nor in their oral arguments to the Magistrate Judge did the Petitioners articulate how discovery into Respondent's global affairs would be relevant to satisfying the judgment or not disproportionate to the needs of the case.  The Magistrate Judge did not consider the question, either.  Instead, Petitioners' sole argument was that they were "entitled" to this discovery, regardless of relevance.  *See* ECF 114 at 25 ("Petitioners Are Entitled to Discovery of the ROK's Assets and Commercial Relationships Both Inside and Outside the United States").  Petitioners claimed this entitlement based on their misreading of the Supreme Court's decision in *Republic of Argentina v. NML Capital, Ltd*.

A.    ***NML Capital* Does Not Entitle Petitioners to Sweeping Foreign Discovery**

As Petitioners would have it, the Supreme Court in *NML Capital* gave judgment creditors in New York Convention enforcement cases *carte blanche* to pursue virtually unlimited discovery against foreign sovereigns and "squarely rejected" any limitations that can be found in the FSIA or Rule 26.  *Id.* at 11-13, 25-28.  Petitioners also claim that the Supreme Court removed lower courts from performing the balancing test that Rule 26(b)(1) requires for any discovery

requests.  *Id*.  In so doing, according to Petitioners, the Court overruled *sub silentio* all previous

FSIA cases in which courts imposed limitations on discovery by judgment creditors.  *Id*.

The Supreme Court, in fact, did none of these things.  *NML Capital* did not even involve

discovery from a foreign sovereign, which enjoys certain protections from discovery that courts

have found to be inherent in the FSIA, but instead involved limited discovery to ***a third-party***

***bank***.  As importantly, the holding in *NML Capital* was expressly limited to a "single, narrow

question" of whether the text of the FSIA, alone, imposed any limitations on discovery "***from***

***third-party banks*** about the judgment debtor's assets located outside the United States."  *NML*

*Capital,* 573 U.S. at 140 (emphasis added).  The Court properly answered this question in the

negative because the text of the FSIA does not refer to discovery.  In making this holding,

however, the Court expressly did not rule on whether Rule 26(b)'s balancing test – which the

Court noted does impose limitations on all discovery, including discovery against foreign

sovereigns – ***would have*** prohibited the extraterritorial discovery sought in that case, because the

appellant (Argentina) did not put Rule 26 "in contention."  *Id*. at 139.  The Court did, however,

approvingly cite the district court's efforts in that case to "limit the subpoenas to discovery that

was reasonably calculated to lead to attachable property."  *Id*. at 138.  And it explained that the

discovery would be impermissible if it sought "*information that could not possibly lead to*

*executable assets is simply not 'relevant' to execution in the first place*" under Rule 26.  *Id*. at

144 (emphasis added).  As such, the Supreme Court's reasoning in *NML Capital* supports the

exact argument made by Respondent – that Rule 26 does not permit discovery against foreign

sovereigns that is either "simply not 'relevant' to execution in the first place" or disproportionate

to the needs of the case.

**B.**     *NML Capital* **Is Not a New York Convention Case**

The *NML Capital* decision also came in an inapposite context.  *NML Capital* did not address discovery in the context of enforcement of an arbitral award under the New York Convention.  Instead, that case was originally brought by plaintiffs in the Southern District of New York and involved the enforcement of the judgment issued in those original proceedings. In that context, the district court stated that it had an interest in serving as a "'clearinghouse for information' in NML's efforts to find and attach Argentina's assets" wherever they were located, because it was in enforcement of its own original judgment.  *EM Ltd.*, 695 F.3d at 204.  The same was true in *Amduso v. Republic of Sudan*, also cited by Petitioners, in which this Court issued a default judgment against Sudan under the terrorist exception to the FSIA and subsequently authorized discovery to enforce it.  288 F. Supp. 3d 90 (D.D.C. 2017).  Even so, this Court in *Amduso* authorized discovery only after (a) it attempted to avoid discovery altogether by ordering the plaintiffs to seek the information first from the United States Treasury Department's Office of Foreign Assets Control, and (b) the plaintiffs "considerably narrowed their initial discovery request" to only four specific categories of information.  *Id*. at 93-94.

By contrast, Petitioners here brought this case pursuant to the New York Convention to enforce an international arbitral award.  Such worldwide discovery, moreover, would run afoul of the New York Convention, under which Petitioners brought this case.  The purpose of the New York Convention, as confirmed in Petitioner's above representation, is to permit parties that win an arbitration to attempt to "recognize and enforce" the resulting award in signatory counties where the award debtor may have assets.  *See Scherk v. Alberto-Culver Co.*, 417 U.S. 506 (1974) ("The goal of the [New York] Convention, and the principal purpose underlying the American adoption and implementation of it, was to encourage recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements

28

to arbitrate are observed and arbitral awards are enforced *in the signatory countries.*") (emphasis added); *see also Int'l Trading & Indus. Inv. Co. v. DynCorp Aerospace Tech.*, 763 F. Supp. 2d 12, 25 n. 9 (D.D.C. 2011) ("[A] proceeding to confirm an award, which can be held in any other signatory state to the New York Convention, concerns whether an arbitral award … should … be enforced in that particular state."); *Asignacion v. Rickmers Genoa Schiffahrtsgesellschaft mbH & Cie KG*, 783 F.3d 1010, 1015-16 (5th Cir. 2015) ("The Convention applies when an arbitral award has been made in one signatory state and recognition or enforcement is sought in another signatory state.").

Certainly, the purpose of the New York Convention is not, as Petitioners now would have it, to permit recognition of an arbitral award in the United States against a foreign sovereign so that the award creditor can then turn around and use the liberal post-judgment discovery permitted by the Federal Rules of Civil Procedure to attempt to obtain information concerning the property of that foreign sovereign *outside* the United States.  Respondent is not aware of any authority supporting this radical proposition.  In the proceedings before the Magistrate Judge, Petitioners cited no such authority.  Instead, they cited *only* cases in which courts (a) authorize foreign discovery to enforce their own judgments, not foreign awards,[4] or (b) involve confirmation of international arbitral awards, but not discovery into foreign assets.[5]  ECF 114 at 25-28.

---

[4]   *See*, *e.g.*, *Leibovitch*, 297 F. Supp. 3d at 821.

[5]   *See*, *e.g.*, *Cont'l Transfert Technique Ltd.*, 308 F.R.D. at 38 (involving whether petitioner could conduct a Rule 30(b)(6) deposition of a sovereign, but not involving discovery into foreign assets); *FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 603 F. Supp. 2d 1, 2 (D.D.C. 2009) (involving the enforcement of writs of execution issued against two properties in the District of Columbia); *see also Democratic Republic of Congo v. FG Hemisphere Assocs.*, LLC, 508 F.3d 1062, 1064 (D.C. Cir. 2007).

Confirming that the New York Convention was not intended for such abusive purposes, United States courts regularly decline to exercise jurisdiction in New York Convention cases when arbitral award debtors lack assets in the jurisdiction in which award confirmation is requested. *See Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1125-26 (9th Cir. 2002) (finding no jurisdiction over party that "is incorporated in India, owns no property in the forum, and has no employees or persons authorized to act on its behalf there"); *First Inv. Corp. of Marshall Islands v. Fujian Mawei Shipbuilding, Ltd*., 703 F.3d 742, 747 (5th Cir. 2012), as revised (Jan. 17, 2013) (holding that the court could not confirm foreign arbitral award because it could not exercise jurisdiction over "foreign entities that are neither present nor have property in the United States"). The Fifth Circuit, in fact, questioned whether the judgment creditor there was abusing the New York Convention by seeking to confirm an arbitral award in a jurisdiction without assets, presumably to avoid the Convention's three-year statute of limitations. *First Investment,* 703 F.3d at 751 n.5.

For these reasons, this Court should not adopt Petitioners' unsupported, radical assertion that unlimited fishing expeditions regarding non-U.S. assets of a foreign sovereign are authorized by Rule 26 in New York Conventions cases. Granting Petitioners such a blank discovery check would have serious consequences for future cases. It would give award creditors around the world incentive to register arbitral awards or judgments in this District – not to attempt to identify and or execute against any U.S. assets of the award debtor – but rather to abuse the discovery processes permitted by the Federal Rules of Civil Procedure and turn this Court into a discovery clearinghouse for worldwide issues. As here, the award creditor would not need to establish that an award debtor maintained any assets in this District or even in the United States,

to trigger such unlimited discovery.  This is improper, for the reasons stated above, and should be rejected.

## II.     Petitioners Are Not Entitled to Discovery Regarding Instrumentalities

Petitioners seek world-wide discovery concerning not only Respondent but also regarding third parties that they claim are Respondent's instrumentalities.  This includes discovery into 130 joint stock companies in which Respondent owns shares, as well as the 25 third parties listed in Petitioners' documents requests, none of which operate in the United States.  Just as with the non-U.S. discovery that Petitioner has propounded regarding Respondent, such discovery is improper because the property of third parties that are legally distinct entities is exempt from attachment.  The case law firmly establishes that assets belonging to instrumentalities cannot be used to satisfy a judgment against a sovereign unless the sovereign and the instrumentalities are alter egos. *Bancec*, 462 U.S. at 630-33; *Transamerica Leasing, Inc.*, 200 F.3d at 848; *De Letelier*, 748 F.2d at 794.

Petitioners have made no showing that any of the third parties about which they seek discovery are Respondent's alter egos such that this Court can ignore their corporate form. Indeed, discovery has shown precisely the opposite – that Respondent has no role in the day-to-day operational activity of these third parties.  *See* Kirtland Decl., Ex. 12 at 18:10-20:14 (testimony of Mr. Ibraimov that Kazakhstan "doesn't get involved into the operational activity" of the third parties); *id.*, Ex. 13 at 82:12-22, 84:10-85:16, 87:22-88-16, 144:19-145:10 (testimony of Mr. Madaliyev that Kazakhstan has no role in their day-to-day activities).  As a result, any discovery concerning these third parties would be irrelevant to execution of this Court's judgment and thereby also disproportional to the needs of the case.

Petitioners did not dispute that they cannot attach the assets of third parties to satisfy a judgment against Respondent in the absence of extraordinary circumstances that would permit

veil piercing.  ECF 114 at 29.  Nevertheless, they argue that this Court should award them

unlimited extraterritorial discovery into dozens of third parties just in case they can be shown in

the future to be Respondent's alter egos.  This argument puts the cart before the horse.

Petitioners are not entitled to discovery into third-party instrumentalities, just as discovery as to a

parent company is improper against its subsidiary, and vice versa.  *See*, *e.g.*, *U.S. Int'l Trade*

*Comm'n v. ASAT, Inc.*, 411 F.3d 245, 277-80 (D.C. Cir. 2005) (holding that a subpoena directed

at a California subsidiary was unenforceable against its foreign parent company).

The Supreme Court has made clear that sovereigns and state-owned entities are not

interchangeable for the purpose of satisfying judgments.  *See Bancec*, 462 U.S. at 626-27

("[G]overnment instrumentalities established as juridical entities distinct and independent from

their sovereign should normally be treated as such."); *De Letelier*, 748 F.2d at 794 (holding that

a judgment creditor could not attach the assets of a sovereign's state-owned airlines to satisfy the

judgment against the sovereign).  Ignoring the corporate form would frustrate "the efforts of

sovereign nations to structure their governmental activities in a manner deemed necessary to

promote economic development and efficient administration" and offend "principles of comity

between nations."  *Bancec*, 462 U.S. at 626.

Petitioners entirely ignored the *Bancec* line of cases establishing a presumption of

independent status.  They cited no cases showing that judgment creditors are entitled to

discovery into the assets of legally distinct entities without first showing that those third parties

are alter egos of the judgment debtor.  For example, they cited *Trustees of N.Y. City Dist.*

*Council of Carpenters Pension Fund v. Port Parties, Ltd.*, but there the court allowed such

discovery only after the requesting party made a "strong showing" that the two companies had

"common ownership, management and supervision, [a] common business purpose, [and a]

32

common address and phone number." No. 16-cv-4719, 2018 WL 6061205, at *4 (S.D.N.Y. Nov. 20, 2018). Even so, the court held that "[t]hird-party discovery is not unlimited," it is "'limited to a search for the ***defendant***'s hidden assets,'" and it may not inquire about the ***third party's*** assets. *Id*. at *3 (quoting *Costamar Shipping Co. v. Kim-Sail, Ltd*., No. 95-cv-3349, 1995 WL 736907, at *3 (S.D.N.Y. Dec. 12, 1995) (emphasis added)). Likewise, in *Costamar*, the court held that discovery regarding third parties is only permissible "where the relationship between the judgment debtor and the non-party is sufficient to raise a reasonable doubt about the bona fides of the transfer of assets between them." 1995 WL 736907, at *3 (quotations omitted).

And in *Thai Lao Lignite (Thailand) Co.*, which Petitioners claimed "permit[ed] discovery into whether accounts held in the name of Laos' central bank were truly assets of the Lao government" (ECF 114 at 30), the court limited any discovery to assets in which there was a "***nexus to U.S. assets used for a commercial purpose***." 924 F. Supp. 2d at 513 (emphasis added). Before they could get any discovery regarding the accounts held in New York by the Lao bank, they "provided documentary evidence," including "a Lao statute establishing the Lao Bank as equivalent to a government ministry (presumably indicating a close relationship with Respondent), requiring the Lao Bank to hold Respondent's assets if they are maintained outside of Laos, and providing Respondent a wide-ranging statutory right to request information of the Lao Bank." *Id*. at 514. Only after making that showing did the court permit limited discovery directed at the Lao government into its own assets held by the Lao Bank. But it did not permit discovery into the Lao Bank's assets. *Id*. at 519. With regard to any other accounts held by the Lao Bank, the court held that "specific details of accounts held by the Lao Bank are immune from discovery as well as attachment" unless the petitioner could "show, with specificity," that the accounts belonged to the government and not the bank. *Id*. at 522-23.

Petitioners have made no showing here to overcome the presumption of independent status. Although Petitioners baldly claimed that there is "no question" that Respondent is the alter ego of dozens of third parties, they could only point to the decisions of three foreign courts, two of which made no alter ego finding, and all of which are irrelevant to the operative question – the stringent alter ego test imposed under United States law by the Supreme Court in *Bancec*. ECF 114 at 31-33. As explained above, a determination in a United States court of whether two sovereign entities are alter egos is a question exclusively of United States law under *Bancec* and its progeny. *See Crystallex Int'l Corp. v. Bolivarian Republic of Venezuela*, No. 18-cv-2797, 2019 WL 3403888, at *12 (3d Cir. July 29, 2019) ("The Sovereign Immunities Act is the exclusive basis for finding jurisdiction in suits involving foreign sovereigns and instrumentalities, and *Bancec* is binding federal common law for disputes under the Act."). Legal decisions made by foreign courts under foreign law are irrelevant to such determinations.[6]

## III.   Further Discovery Is Irrelevant and Cumulative Because Sufficient Assets Are Already Attached in Europe

The Magistrate Judge also failed to address or consider Respondent's argument that further discovery in this matter is not permitted by Fed. R. Civ. P. 26 because, as Petitioners have conceded, they have already attached far more in assets in foreign proceedings than they need to satisfy their arbitral award. As such, and given the results of the discovery to date, any further post-judgment discovery against Respondent would be unreasonably cumulative or duplicative. *See In re Subpoena to Goldberg*, 693 F. Supp. 2d 81, 87 (D.D.C. 2010) (quashing deposition that would be cumulative and only marginally relevant); *John C. Flood of Virginia, Inc. v. John C.*

---

[6] Petitioners, moreover, have mischaracterized the holdings in these cases, two of which had nothing to do with any determination of alter ego status. In fact, what is clear from the foreign orders cited by Petitioners is that they have extraterritorial attachments in an amount far in excess of the underlying arbitral award. As such, again, Petitioners have no need for any extraterritorial discovery.

*Flood, Inc.*, No. 06-civ-1311, 2008 WL 281066, at *4 (D.D.C. Feb. 1, 2008) (barring the production of additional evidence of trademark use that would be cumulative or duplicative); *Sourgoutsis v. U.S. Capitol Police*, 323 F.R.D. 100, 112 (D.D.C. 2017) (quashing subpoenas when the plaintiff "already has received that information" sought by the subpoenas); *Colonial BancGroup, Inc. v. PricewaterhouseCoopers LLP*, 110 F. Supp. 3d 37, 42 (D.D.C. 2015) (quashing a document subpoena that sought cumulative information in which the burden outweighed its likely benefit).

Given the extraordinary amount that Petitioners have already attached in foreign proceedings, any argument that Petitioners need further non-U.S. discovery is particularly disingenuous and will serve only to harass and unduly burden a foreign sovereign.  In Belgium, Petitioners have attached approximately $520 million to satisfy their judgment.  ECF 83-1 at 3-4. This alone is sufficient to fully secure the amount of the arbitral award.  In Luxembourg, Petitioners have attached at least $400 million.  *Id.* at 4-5.  In Sweden, they have attached approximately $100 million.  *Id.* at 5-6.  And in the Netherlands, Petitioners have attached assets **in excess of $5 billion**, more than ten times the approximately $500 million arbitral award.  *Id.*

In fact, as noted above, Petitioners relied on the fact that their award has been fully secured to have the English court permit them to abandon their enforcement proceedings in that jurisdiction.  There, Petitioners initiated enforcement proceedings in 2014.  *Id.* at 7-8.  When Kazakhstan challenged the attachment by presenting evidence of Petitioners' fraud in securing the arbitral award, the court held that Kazakhstan had demonstrated a *prima facie* case of fraud, and it ordered a full trial on the merits.  *Id.*  In response, Petitioners filed a notice to discontinue their enforcement attempt.  *Id.*  One of the "compelling reason[s]" asserted by Petitioners in support of a discontinuance was that the attachments they had levied in the foreign proceedings

removed the need for further enforcement of the arbitral award.  *Id*.  They stated because

"enforcement measures outside the jurisdiction are *highly likely* to satisfy" the arbitral award the

"practical need" to pursue enforcement in the London Proceedings is gone.  *Id.* (emphasis

added).  The English courts agreed to dismiss the enforcement proceedings on this basis.  *Id*.

Having represented to the English courts that no further enforcement proceedings are

necessary because their arbitral award has already been fully secured more than ten times over,

Petitioners cannot credibly assert to this Court that they have any need for additional discovery

from Respondent.  Such discovery certainly cannot justify the burden that would be imposed on

Respondent, in clear violation of the FSIA's purpose of shielding sovereigns from the "time and

expense, and other disruptions attendant to litigation."  *Kelly v. Syria Shell Petro*, 213 F.3d 841,

849 (5th Cir. 2000).  As a result, even if Petitioners can show some marginal relevance of their

discovery requests – which they cannot – such requests would not be "proportional to the needs

of the case" under this Court's balancing analysis.  Fed. R. Civ. P. 26(b).

Again, Petitioners did not (and could not) make any argument that further discovery was

either necessary or relevant when they had already attached more than ten times the amount

needed to satisfy their award.  Instead, they argue that further discovery could not be cumulative,

because Respondent had not produced any documents in this case.  Courts, however, determine

whether evidence is cumulative not based on whether specific documents have been produced or

depositions taken, but on whether the requesting party already has the information it ***needs***.  *See*,

*e.g.*, *Sourgoutsis*, 323 F.R.D. at 112 (quashing subpoenas when the plaintiff "already has

received that information" sought by the subpoenas).  Here, Petitioners already have attached

assets worth nearly $6 billion in proceedings abroad; they ***do not need*** extraterritorial discovery.

36

Indeed, Petitioners admitted this when they voluntarily dismissed their own enforcement proceedings in England because they had no further need for enforcement.[7]

## **CONCLUSION**

For the foregoing reasons, Respondent respectfully requests that this Court vacate the August 13, 2019 Minute Order, and grant Respondent's Motion for a Protective Order, staying further discovery against Respondent in this case.

---

[7] Petitioners also claim, incorrectly, "this Court has already ruled that ongoing enforcement proceedings outside of the United States are irrelevant to the present proceedings and should thus not be considered when determining whether further discovery is permissible." ECF 114 at 25.  This Court did no such thing.  Instead, the Court held that Respondent had not shown that execution should be stayed pending appeal in the absence of a supersedeas bond.  ECF 91 at 3-5.  It did so based on the Supreme Court's "stringent standard for a stay pending appeal," and it held that the attachments in Europe were "inadequate as alternative security" in lieu of a supersedeas bond because Respondent was seeking to vacate those attachments.  *Id.*  Contrary to Petitioners' claims, this holding had nothing to do with discovery or the standards under Rule 26(b)(1) and Rule 26(c)(1) for determining whether a protective order is required because discovery is irrelevant, disproportional, and designed to cause oppression, undue burden and expense.