**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

ANATOLIE STATI; GABRIEL STATI; ASCOM GROUP, S.A.; TERRA RAF TRANS TRAIDING LTD.,

Petitioners,

v.

REPUBLIC OF KAZAKHSTAN,

Respondent.

Civil Action No. 14-1638 (ABJ)

**ORDER**

Pending before the Court is an appeal by respondent Republic of Kazakhstan ("respondent" or "Kazakhstan") of a decision by the Magistrate Judge overseeing discovery in this matter. At a hearing on August 13, 2019, the Magistrate Judge denied Kazakhstan's motion for a protective order against further post-judgment discovery sought by petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. ("petitioners" or "Stati parties"). The parties have been engaged in post-judgment discovery after this Court issued an order confirming an international arbitration award that petitioners had obtained against Kazakhstan. Order [Dkt. # 69]. The Stati parties seek to attach respondent's assets in the United States sufficient to secure the arbitral award, and they have propounded discovery requests to Kazakhstan in an effort to identify attachable assets. Kazakhstan has refused to produce documents in response to petitioners' request for production of documents, and it sought a protective order from the Magistrate Judge, which was denied. Kazakhstan has filed an objection to that order, which is before this Court. Kaz. Objections to Minute Order Dated Aug. 13, 2019 Denying Mot. for

Protective Order [Dkt. # 117] ("Kaz. Objs."). For the following reasons, the Court will uphold the Magistrate Judge's denial of the protective order.

**BACKGROUND**

This case began with the Stati parties' petition to confirm an arbitral award obtained in connection with a dispute over oil and gas contracts. *See* Pet'n to Confirm Arbitral Award [Dkt. # 1]. The Court heard the case pursuant to two federal statutes: the Foreign Sovereign Immunities Act ("FSIA"), which gives U.S. courts jurisdiction over foreign states under specific circumstances, 28 U.S.C. § 1602 *et seq.*, and the Federal Arbitration Act ("FAA"), which codifies the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards ("the New York Convention"), and gives U.S. courts original jurisdiction to enforce foreign arbitration awards involving commercial disputes. 9 U.S.C. § 203; *see* New York Convention, June 10, 1958, 21 U.S.T. 2517, T.I.A.S. No. 6697. On March 23, 2018, the Court entered judgment in petitioners' favor, confirming an international arbitral award the Stati parties had obtained against Kazakhstan. Order [Dkt. # 69]; *Stati v. Republic of Kaz.*, 302 F. Supp. 3d 187 (2018).[1] The matter has been extremely contentious since the beginning, and it is not surprising that the issuance of the order did not put the dispute to rest.

The parties have been engaged in post-judgment discovery since then, and on May 1, 2018, petitioners served a request for production of documents ("RFP") and two deposition notices on Kazakhstan. Pet'rs' First Set of Doc. Reqs. to the Republic of Kaz. [Dkt. # 117-3] ("First RFP");

---

1 Respondent appealed this ruling, and on April 19, 2019, the D.C. Circuit affirmed it. Judgment [Dkt. # 108-1]. After the D.C. Circuit entered its mandate, this Court entered final judgment on July 16, 2019 in favor of petitioners in the amount of US$ 506,660,597.40 plus interest. Order [Dkt. # 112]. On November 13, 2018, the Court entered an order denying without prejudice the Stati parties' request to register the judgment in other districts in the United States. Order [Dkt. # 91]. The November 13, 2018 ruling did not address discovery. *See id.* at 7–8.

Notice of Dep. Pursuant to Fed. R. Civ. P. 30(b)(6) [Dkt. # 117-4]; Notice of Dep. Pursuant to Fed. R. Civ. P. 30(b)(1) [Dkt. # 117-5]. The First RFP sought documents concerning respondent's assets inside and outside the United States, the relationships between respondent and its instrumentalities, and their specific transactions and commercial relationships. *See* First RFP. On June 4, 2018, Kazakhstan responded, objecting to the requests under Federal Rule of Civil Procedure 26 as vague, overly broad, burdensome, and harassing, and under the FSIA as "exceed[ing] the limitations imposed by" that statute. *See* Kaz.'s Responses and Objs. to First RFP [Dkt. # 117-6]. The parties' discovery disputes were referred to a Magistrate Judge on December 4, 2018. Order [Dkt. # 97].

On December 21, 2018, the Magistrate Judge ordered respondent to make Almas Taigulov available for a deposition to be conducted by January 17, 2019, after which the parties were to "meet and confer []in an effort to resolve their disputes regarding the scope of the remaining discovery." Order [Dkt. # 99] ¶¶ 3–4. On January 4, 2019, Kazakhstan advised the court that Taigulov no longer worked at the Embassy and was no longer in Washington. Joint Status Report [Dkt. # 101] at 2.

On May 9, 2019, petitioners deposed Kalymzhan Ibraimov, Deputy Chair of the Committee for State Property and Privatization in the Kazakh Ministry of Finance.[2] On May 31, 2019, the Magistrate Judge held a status hearing and granted a renewed request by petitioners to take a 30(b)(6) deposition. Order [Dkt. # 107]. The order precluded petitioners from inquiring about non-U.S. assets, but it noted that provision was subject to possible further review. *Id.* at 1 n.*. On

2 *See* Tr. of Dep. of Kalymzhan Ibraimov [Dkt. # 106-1] ("Ibraimov Tr.").

June 18, 2019, petitioners deposed the Deputy Minister of Justice of the Republic of Kazakhstan, Almat Madaliyev, as a 30(b)6) witness.[3]

Both deponents averred that Kazakhstan has no commercial property in the United States, and they did not answer questions about assets outside the United States. *See* Tr. of Proceedings (Aug. 13, 2019) [Dkt. # 116] ("Hr'g Tr.") at 19–20.

On July 13, 2018, the parties filed a joint status report, in which petitioners stated that the 30(b)(6) deposition "was intended to obtain information about the persons and entities having knowledge about the ROK's assets" to allow petitioners to target discovery efforts, but provided "very little useful information." Joint Status Report [Dkt. # 111] at 3–4. They urged the Court "turn its attention to Petitioners' still-pending First Request for Production of Documents." *Id.* at 4. Respondent disputed petitioners' assessment, and it advised that it planned to file a motion for protective order against further discovery. *Id.* at 5. Three days later, on July 16, 2019, Kazakhstan filed its motion, which the parties briefed,[4] and on August 13, 2019, the Magistrate Judge held a hearing on the motion. *See* Hr'g Tr. The Magistrate Judge denied the motion, stating:

> I have ruled. And I have indicated that the next step will be that respondent produce the documents responsive to the petitioners' request for production of documents.
>
> * * *
>
> The Court . . . order[s] that the parties undertake an effort to meet and confer in . . . a renewed effort to agree upon limits of either the number of requests or the definitions.

Hr'g Tr. at 34, 40.

---

3 *See* Tr. of Dep. of Almat Madaliyev [Dkt. # 111-1] ("Madaliyev Tr.").

4 *See* Resp't's Mot. for Protective Order [Dkt. # 113]; Pet'rs' Mem. of P. & A. in Opp. to Resp't's Mot. for Protective Order [Dkt. # 114]; Resp't's Reply in Supp. of Mot. for Protective Order [Dkt. # 115].

On August 23, petitioners proposed a narrowed set of document requests to Kazakhstan. Email from Charlene Sun to Matthew Kirtland (Aug. 23, 2019) [Dkt. # 119-3] (attaching redlined version of First RFP), but Kazakhstan did not engage in the meet and confer process. Instead, on August 27, 2019, Kazakhstan filed its objection to the Magistrate Judge's ruling, petitioners responded, and Kazakhstan replied.[5] That objection is ripe for this Court's decision.

**ANALYSIS**

Kazakhstan argues that it was entitled to a protective order because the depositions established that there are no assets that can be attached in the United States, and therefore no further discovery is necessary or appropriate. Hr'g Tr. at 16–17. It contends that petitioners are not entitled to discovery about its property or commercial dealings outside the United States, Kaz. Objs. at 25–31, or its instrumentalities, *id*. at 31–34, and that further discovery would be cumulative because petitioners have already attached assets sufficient to cover the arbitral judgment in parallel proceedings in Europe. *Id*. at 34–37.

Petitioners propounded the First RFP to respondent in May of 2018. First RFP. Respondent made blanket objections to each request, producing no documents without asserting that no documents exist. Kaz.'s Responses and Objs. to First RFP. The parties' discovery disputes were referred to a Magistrate Judge, and she ordered discovery to proceed in phases, with certain depositions first, and the scope of the remaining discovery to be determined after that. Order (Dec. 21, 2018) [Dkt. # 99]; *see also* Minute Order (Jan. 11, 2019) ("This court contemplated that prior to a final determination with respect to the appropriate scope of discovery, Petitioners would first have the opportunity to depose Almas Taigulov . . . ."). After petitioners deposed

5 Kaz. Objs.; Pet'rs' Mem. of P. & A. in Opp. to Kaz. Objs. [Dkt. # 119]; Kaz. Reply in Supp. of Objs. [Dkt. # 120].

Kazakhstan's witnesses, they pressed for responses to their still-pending RFP, *see* Joint Status Report [Dkt. # 111], prompting Kazakhstan to file its motion for protective order to end paper discovery before it ever got underway. Kaz. Objs.

Federal Rule of Civil Procedure 69 governs discovery in post-judgment execution actions. It provides that a judgment creditor "[i]n aid of the judgment or execution, . . . may obtain discovery from any person – including the judgment debtor – as provided in these rules." Fed. R. Civ. P. 69(a)(2). The Supreme Court has made clear that "[t]he rules governing discovery in postjudgment execution proceedings are quite permissive," *Rep. of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 138 (2014), and are not altered by the fact that a defendant is a foreign government sued under FSIA, rather than a private party sued under some other legal authority. *Id.* at 140–148; *see id.* at 144–45 (emphasizing the FSIA's silence on the issue of discovery: "[t]here is no . . . provision forbidding or limiting discovery in aid of execution of a foreign-sovereign judgment debtor's assets . . . . [T]he Act says not a word on the subject."); *see also FG Hemisphere Assocs., LLC v. Dem. Rep. of the Congo*, 637 F.3d 373, 377–79 (D.C. Cir. 2011) ("Congress kept in place a court's normal discovery apparatus in FSIA proceedings."), citing H.R. Rep. No. 94–1487, at 23 (1976), 1976 U.S.C.C.A.N. 6604, 6621 ("The bill does not attempt to deal with questions of discovery. Existing law appears to be adequate in this area.").

Kazakhstan argues that *NML Capital* does not apply here because it did not involve enforcement of a foreign arbitration award under the New York Convention, as this case does. Kaz. Objs. at 28–29. But the New York Convention concerns the recognition and enforcement of foreign arbitration awards, and the FAA, which codifies the convention in federal law, gives federal courts original jurisdiction to enforce such awards involving commercial disputes regardless of the amount in controversy. 9 U.S.C. § 203. It provides that after an arbitration award

falling under the New York Convention is made, any party to the arbitration may apply for an order confirming the award as against any other party to the arbitration, and it requires the court to "confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." *Id.* § 207; *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 727 (D.C. Cir. 2012) (holding that the FAA affords district courts "little discretion in refusing or deferring enforcement of foreign arbitral awards").

The Court has found no legal authority – and Kazakhstan cites none – that stands for the principle that post-judgment discovery in a New York Convention case is governed by anything other than the Federal Rules of Civil Procedure. Indeed, the Convention provides that contracting states shall "recognize arbitral awards as binding and enforce them in accordance with the rules of procedure of the territory where the award is relied upon." New York Convention art. III. In other words, it "does nothing more than direct the Court to enforce awards in accord with the procedural rules of this jurisdiction." *Thai Lao Lignite (Thailand) Co. v. Gov't of Lao People's Democratic Republic*, No. 10 Civ. 5256 (KMW) (DCF), 2013 WL 1703873, at *5 (S.D.N.Y. Apr. 19, 2013). Given this, and the authority set forth in *NML Capital*, the Court holds that Rules 69 and 26 govern its analysis of Kazakhstan's motion.

Kazakhstan devotes many pages to arguing why petitioners should not be allowed to discover information about its assets abroad, but its objections gloss over the fact that petitioners' first eighteen requests seek documents about Kazakhstan's assets *in* the United States. First RFP at 12–15. Respondent does not dispute that the FSIA allows for the attachment of certain foreign sovereign property located in the United States. 28 U.S.C. §§ 1609, 1610; *see* Kaz. Objs. at 2 (stating that petitioners may "attach Kazakhstan's 'property in the United States . . . used for a commercial activity in the United States.'"). Given that Kazakhstan has made no meaningful effort

to respond to the First RFP, and that the Magistrate Judge sought to establish a reasonable step-by-step discovery process, the Court finds the Magistrate Judge's denial of Kazakhstan's motion for a blanket protective order was entirely appropriate.

Kazakhstan asserts that "[t]he substantial discovery provided by Respondent in these steps has confirmed that Respondent maintains no potentially attachable assets in the United States." Kaz. Objs. at 19. But the Supreme Court has made clear that the possibility that a judgment-creditor's discovery request may provide information about assets that the foreign sovereign regards as immune does not make that discovery inappropriate. *NML Capital*, 573 U.S. at 144–45 (rejecting the argument that "if a judgment creditor could not ultimately execute a judgment against certain property, then it has no business pursuing discovery of information pertaining to that property" because "[the judgment-creditor] *does not yet know* what property [the judgment-debtor] has and where it is, let alone whether it is executable under the relevant jurisdiction's law") (emphasis in original).

Further, under Rule 69, courts may allow discovery beyond a judgment-debtor's self-serving statement that it has no assets. *See FDIC v. LeGrand*, 43 F.3d 163, 172 (5th Cir. 1995) (allowing discovery of a judgment-debtor's tax return because it "can verify the information provided by the judgment-debtor concerning his assets and income, and it can reveal a judgment-debtor's attempts to hide assets"); *ClearOne Commc'ns Inc. v. Chiang*, 276 F.R.D. 402, 404 (D. Mass. 2011) (permitting "full discovery" into judgment debtor's ability to satisfy the judgment notwithstanding judgment debtor's statement in an affidavit that he had no executable assets); *Sembawang Shipyard, Ltd. v. M/V Charger*, 1991 U.S. Dist. LEXIS 3568, at *5–6 (E.D. La. 1991) (permitting post-judgment discovery into corporate judgment debtor's assets to test judgment debtor's assertion that it did not maintain enough assets to post a supersedeas bond).

Here, the Magistrate Judge made it clear that the depositions were designed to be a first step in the process to determine the scope of further discovery. Order (Dec. 21, 2018) [Dkt. # 99]; Minute Order (Jan. 11, 2019); *see also* Hr'g Tr. at 12 ("THE COURT: And do you acknowledge that the context of [the depositions] was in an effort to establish what I might loosely call phases of discovery in an effort to encourage respondent to do something to comply with the petitioners' discovery requests? In other words, that doing so was a starting point and not an ending point?"). To that end, she denied the motion for a protective order and ordered respondent to produce documents in response to the First RFP, directing the parties to meet and confer to try to narrow the request. The Stati parties have wisely reduced their unduly long list of requests, and the process contemplated by the Magistrate Judge is nowhere near complete. For these reasons, Kazakhstan's arguments that its assets abroad are immune from attachment under the FSIA, Kaz. Objs. at 2, and that its instrumentalities are not its alter egos, *id*. at 30, are premature. Petitioners are not seeking to attach respondent's assets abroad or assets of its instrumentalities; they are seeking discovery to "identify where [Kazakhstan] may be holding property that *is* subject to execution." *NML Capital*, 573 U.S. at 144–45 (emphasis in original).

Finally, the Court finds that further discovery is not cumulative even though the Stati parties have attached assets in Europe in an effort to secure the arbitral judgment because Kazakhstan has challenged those attachments, *see* Reply in Supp. of Resp't's Mot. [Dkt. # 90] at 6 (acknowledging its legal challenges to the European attachments), and those challenges are ongoing. *See* Decl. of Charlene C. Sun [Dkt. # 132-1] ¶ 3 (stating that Kazakhstan asked an English court for permission to appeal that court's ruling declining to vacate attachment there, which the English court denied on May 4, 2020). If there comes a time when the award has actually been satisfied, the parties should promptly notify the Court.

For these reasons, the Court upholds the Magistrate Judge's order denying respondent's motion for a protective order.

AMY BERMAN JACKSON
United States District Judge

DATE: May 18, 2020