# UNITED STATES DISTRICT COURT
# DISTRICT OF COLUMBIA

ANATOLIE STATI; GABRIEL STATI;
ASCOM GROUP, S.A.; TERRA RAF TRANS
TRAIDING LTD.,

        Petitioners,

  v.

REPUBLIC OF KAZAKHSTAN,

        Respondent.

Civil Action No. 1:14-cv-1638-ABJ-DAR

## JOINT STATUS REPORT

Petitioners Anatolie Stati, Gabriel Stati, Ascom Group, S.A., and Terra Raf Trans Traiding Ltd. ("Petitioners") and Respondent Republic of Kazakhstan ("ROK" or "Respondent") respectfully submit this Joint Status Report in accordance with the Court's June 5, 2020 Order.

### Petitioners' Statement

As the Court is aware, on August 13, 2019, this Court issued a minute order ("August 13 Order") denying the ROK's motion for a protective order, directing the parties to "beginning as soon as practical and concluding by August 30, 2019, meet and confer in an effort to limit the number of, and definitions accompanying, the Petitioners requests for production of documents," ordering the parties to jointly file a status report by no later than September 9, 2019, and ordering the ROK to "produce the documents responsive to the remaining requests by no later than November 8, 2019."  Given the passage of time since the August 13 Order was issued, Petitioners will briefly recite herein the events immediately following the issuance of that order,

and then inform the Court of events taking place after the ROK's objections to the August 13
Order ("Rule 72 Objections") were overruled.

**A.  The ROK's Refusal to Comply with the August 13 Order Pending Its Rule 72
Objections**

As reported in the parties' September 9, 2019 joint status report, the ROK made virtually
no attempt to comply with any part of the August 13 Order.  In response to that order, on August
23, 2019, Petitioners sent a proposed revised version of their First Request for Production of
Documents to the ROK's counsel ("Proposed Revised RFP"), which offered to narrow
Petitioners' initial First Request for Production of documents by (a) reducing, from 182 to 40,
the number of individual document requests required to be satisfied; (b) incorporating a
materiality threshold of $100,000; (c) limiting the geographic scope of the document requests to
specified countries; (d) narrowing the temporal scope and (e) substantially reducing the number
of entities coming within the definition of "ROK Instrumentality."  *See* Dkt. No. 118, 118-1.
The ROK waited for the entire meet and confer period to elapse before responding on August 30,
2019 that it did not intend to proceed with discovery unless and until its Rule 72 Objections had
been resolved.  Dkt. 118-2.  After Petitioners pointed out in response that there was no basis for
this refusal given that the ROK had not even sought or obtained a stay of the August 13 Order,
the ROK – after waiting another week – informed Petitioners on September 6, 2019 that it
"intend[s] to move for a formal stay," while noting that "we can certainly discuss revisions to the
document requests that focus on areas that will not prejudice our rights."  *Id*.  Petitioners
requested that the ROK make a counter-proposal to the Proposed Revised RFP.  *Id*.

The ROK waited until the day the parties' joint status report was due – September 9,
2019 – to send a counter-proposal, which consisted of an offer to undertake a reasonable search
for non-privileged documents responsive to eight of the 40 requests in the Proposed Revised RFP

(two of which the ROK proposed to scale down further), but only "to the extent that the revised document requests fall within" what the ROK considered to be its own "property in the United States … used for a commercial activity in the United States." *Id*. The ROK further proposed to limit the time period covered by the request to "current property," thus eliminating any historical data. Understanding that this counterproposal was designed to allow the ROK to make a number of legal assumptions in interpreting the scope of its own discovery obligations, and to ultimately yield little, if any, useful documentation, Petitioners responded later that afternoon that the ROK's proposal was insufficient. *Id*. The ROK ultimately never filed its motion to stay the August 13 Order, which has remained fully operative and in effect since the day it was issued. The ROK produced no documents to Petitioners on November 8, 2019, and to this day has made no production of documents to Petitioners.

As the foregoing demonstrates, the ROK made no genuine effort to comply with the August 13 Order, instead choosing to drag its feet during the 17-day meet and confer period provided by the Court, and attempt to use its now-overruled Rule 72 Objections as a thin excuse to ignore its document production obligations.

On November 8, 2019, after this Court adjourned its previously scheduled status hearing on November 13, 2019, counsel for the ROK emailed Petitioners' counsel to express the ROK's position that the adjournment "confirms what we previously expressed, *i.e.,* that our objections go to the heart of the proper scope of permissible discovery in this matter, including the scope of any further responses to Petitioners' document requests, and that that no further action should be taken with respect to these document requests until after the district judge has the opportunity to rule on our pending objections." Petitioners noted their continuing objection to this position, responding that, absent a stay or an express modification of the August 13 Order, that order

remained effective, and the ROK was obligated to comply with it.  A true and correct copy of this email correspondence is attached hereto as **Exhibit A**.

As a result of the ROK's refusal to comply with the August 13 Order, on December 2, 2019, Petitioners filed a motion for contempt and sanctions ("Sanctions Motion").  Dkt. No. 129. The Sanctions Motion has been fully briefed since December 23, 2019 and remains pending.

### B.    The ROK's Conduct After the Overruling of Its Objections

On May 18, 2020, Judge Jackson overruled the ROK's Rule 72 Objections to the August 13 Order.  Dkt. No. 133.  In the more than eight months that have passed since the parties' last status report filed on September 9, 2019 and the overruling of the ROK's Objections, the ROK did not produce a single document to Petitioners, nor did it seek to meet and confer over the scope of its document production obligations.  Indeed, in the May 18 Order, Judge Jackson noted that "**Kazakhstan has made no meaningful effort to respond to the First RFP**."  Dkt. No. 133 at 9 (emphasis supplied).  Despite Petitioners' attempts to re-engage with the ROK concerning its document production obligations after the overruling of its Rule 72 Objections (detailed below), the ROK still has yet to agree to produce a single document to Petitioners.

First, on May 22, 2020, Petitioners sent a letter to the ROK, noting that the ROK's Objections had been overruled and inquiring as to when the ROK intended to begin document production, which had been outstanding since November 8, 2019.  A true and correct copy of this correspondence is attached hereto as **Exhibit B**.  Although Petitioners believe this Court's remarks during the August 12, 2019 status hearing made clear that any refusal of the ROK to engage in the meet and confer process would result in the ROK having to produce documents responsive to the entire First RFP (Dkt. No. 116, 32:3-13; 43:1-12), Petitioners nonetheless sought the ROK's compliance with the substantially narrowed Proposed Revised RFP,

requesting that production begin on or before May 26, 2020 and be completed on or before August 22, 2020.

The ROK did not respond to this letter; accordingly, on May 29, Petitioners asked the ROK for its response by June 2.  On June 2, the ROK responded by letter, stating its position that it was not required to produce any documents because the parties were unable to agree on a narrowed set of document requests – a circumstance which the ROK attributed "in large part" to "Kazakhstan's pending appeal of the magistrate judge's order to the district court."  A true and correct copy of the ROK's June 2 letter is attached hereto as **Exhibit C**.  The ROK further remarked that, only "[n]ow that the district court has issued its ruling, we need to meet and confer to discuss the scope of the document requests."  The ROK offered no compromise scope of document production.

On June 4, 2020, Petitioners responded, noting their disagreement with the ROK's characterization of the August 13 Order and interpretation of its discovery obligations, and objecting to the ROK's suggestion that only "now that the district court has issued its ruling" was the ROK required to meet and confer.  A true and correct copy of Petitioners' June 4 correspondence is attached hereto as **Exhibit D**.[1]  While expressing willingness to meet and confer on a mutually agreeable scope of production, Petitioners noted that the Proposed Revised RFP had been outstanding for nearly ten months and asked the ROK to provide a concrete counterproposal, listing the categories of documents it was willing to produce and specific deadlines for production.

---

[1]    On the same day, Petitioners also served a Second Set of Interrogatories, targeting specific information concerning assets held by the National Fund, Samruk Kazyna, and the Ministry of Finance, as well as funds paid to U.S.-based service providers.  *See* Ex. D.

In a letter dated June 8, 2020, the ROK responded by accusing Petitioners of refusing to meet and confer, and noting "three new developments" which it claimed would delay its provision of a "written counterproposal."  Specifically, the ROK cited (1) a second set of interrogatories served by Petitioners on June 4, 2020; (2) this Court's June 5, 2020 order compelling third-party Spaceflight's compliance with Petitioners' August 23, 2019 subpoena; and (3) the Court's June 5, 2020 order requiring that the parties file a joint status report on June 19, 2020.  Without any explanation for why these events should impact its ability to provide a counterproposal to the Proposed Revised RFP, the ROK stated it would provide its "written counterproposal" by June 11. A true and correct copy of the ROK's June 8 letter is attached hereto as **Exhibit E**.

On June 11, 2020, the ROK sent another letter to Petitioners, arguing that both Judge Jackson's May 18 Order and the June 5 order compelling Spaceflight's compliance with Petitioners' subpoena implicitly limited the scope of discovery to "assets in the United States that meet the requirements of the FSIA."  A true and correct copy of the ROK's June 11 letter is attached hereto as **Exhibit F**.  Rather than providing a written counterproposal listing categories of documents that the ROK would be willing to produce, the ROK stated simply that "our counter-proposal is that we now must meet and confer regarding your clients' revised document requests dated August 23, 2019, consistent with the Court's definition of the proper scope of discovery."

The above-referenced correspondence demonstrates that, even after the overruling of its Objections, the ROK intends to continue employing a strategy of delay, this time by seeking to use the meet and confer process to relitigate its now-overruled legal arguments concerning the proper scope of discovery.  While the ROK seeks to obfuscate the holdings in the May 18 and

June 5 Orders, both orders were clear on their face that the scope of the ROK's discovery obligations would not be tied to its own self-serving interpretations of what it believes "meet[s] the requirements of the FSIA." By letter dated June 16, 2020, Petitioners noted that the ROK's unwillingness to provide any counterproposal concerning the categories of documents it would be willing to produce reflected that it did not intend to engage in the meet and confer process in good faith. A true and correct copy of Petitioners' June 16 letter is attached hereto as **Exhibit G**.

### C.   Conclusion

The ROK's conduct both before and after the overruling of its Objections demonstrates its continuing refusal to engage in the discovery process in good faith and its open contempt for this Court's orders. As Petitioners noted in their Sanctions Motion (Dkt. No. 129), despite the ROK's untenable position that the August 13 Order was rendered ineffective by the filing of its Rule 72 Objections, the August 13 Order was not stayed pending the adjudication of those objections. Dkt. No. 129-2 at 15-17. This fact was brought to the ROK's attention by Petitioners (*see* Dkt. No. 118-2), and acknowledged by the ROK when it announced its intention (that was never fulfilled) to seek a stay of the August 13 Order (*id*). The ROK's refusal to abide by the August 13 Order was therefore both willful and unjustifiable. Moreover, the ROK's intransigence has continued even after its Rule 72 Objections were overruled. Accordingly, Petitioners respectfully submit that the Court should grant Petitioners' Sanctions Motion, and consider such other and further relief that the Court deems appropriate, including, without limitation, an escalating sanction for each week that the ROK continues to be in default of its discovery obligations. *See, e.g., FG Hemisphere Assocs., LLC v. Democratic Republic of Congo*, 637 F.3d 373, 376 (D.C. Cir. 2011) (affirming contempt fine payable by Republic of Congo ("DRC") to judgment creditor in the amount of $5,000 per week, doubling every four weeks

until reaching a maximum of $80,000 per week, until DRC satisfied its discovery obligations); *see also In re Grand Jury Subpoena*, 912 F.3d 623, 626 (D.C. Cir. 2019) (affirming district court's imposition of fine of $50,000 per day until sovereign entity complied with subpoena); *First City, Texas–Houston, N.A. v. Rafidain Bank*, 281 F.3d 48, 53 (2d Cir. 2002) (affirming district court's order of civil contempt imposing a $1,000 per day fine to compel Iraqi state-owned commercial bank to comply with discovery demands); *Agudas Chasidei Chabad of U.S. v. Russian Fed'n (Chabad IV)*, 915 F. Supp. 2d 148 (D.D.C. 2013) (imposing civil contempt sanctions in the form of a daily fine of $50,000 per day that Russian Federation remained in contempt, payable to plaintiff); *Exp.-Imp. Bank of Republic of China v. Grenada*, No. 06 CIV 2469, 2010 WL 5463876, at *5 (S.D.N.Y. Dec. 29, 2010) (imposing fine of $1,000 per day that Grenada remained in noncompliance with discovery obligations).

### Respondent's Statement

Since the District Court issued its May 18, 2020 Order upholding the Magistrate Court's August 13, 2019 Minute Order, Respondent has repeatedly sought to meet and confer with Petitioners regarding their document requests. Petitioners have steadfastly refused. Respondent has now repeatedly proposed to undertake a reasonable search to produce documents relevant to any property that could be attached to satisfy this Court's Judgment, and Respondent remains willing to do so. Petitioners, however, have twice rejected this offer out-of-hand and now refuse to even meet with Respondent to discuss the matter. It is clear, as a result, that Petitioners' goal is not to discover attachable assets, but solely to harass Respondent.

Respondent respectfully requests that the Court issue an Order directing Petitioners to meet and confer with Respondent by **June 26, 2020** regarding the 40 revised document requests that Petitioners emailed to Respondent on August 22, 2019. This would mean one or more video

or telephone calls between counsel to review Petitioners' revised requests and attempt to resolve or narrow any areas of disagreement in light of this Court's recent orders.  It would not mean, as Petitioners appear to prefer, further exchanges of attorney letters that have little chance of resolving anything.

This Court has held that Petitioners may pursue discovery that is relevant to finding property that can be attached to satisfy this Court's Judgment.  *See* ECF 133 at 1, 9 (holding that Petitioners can properly seek discovery "in an effort to identify attachable assets" and to "'identify where [Kazakhstan] may be holding property that *is* subject to execution.'") (quoting *Rep. of Argentina v. NML Capital, Ltd.*, 573 U.S. 134, 144-45 (2014)); ECF 134 at 14 (holding that Petitioners may seek discovery that "will shed light on the extent to which Respondent engaged in commercial activity and has attachable assets in the United States").  Both the District Judge and Your Honor have specifically allowed discovery to the extent that there is a nexus to potentially attachable assets in the United States.  *See* ECF 133 at 7 (explicitly approving discovery requests that "seek documents about Kazakhstan's assets in the United States"); ECF 134 at 16 (permitting the bulk of discovery requests to third party Spaceflight Inc. but denying discovery "that would not shed any light on the extent to which Respondent has attachable assets in the United States").  Petitioners' present requests as drafted, however, largely seek information concerning property that explicitly *cannot* be attached.  This is shown in a press release that Petitioners issued after this Court's May 19, 2020 Order, in which they claimed, "U.S. Federal Court Compels Kazakhstan To Provide Worldwide Discovery Of Its Assets."[2]

After the District Court issued its May 18, 2020 Order, Petitioners wrote to Respondent with a demand that Respondent "commence and … complete its production of documents under

---

[2]   *See* https://www.prnewswire.com/news-releases/us-federal-court-compels-kazakhstan-to-provide-worldwide-discovery-of-its-assets-301061983.html (last accessed June 19, 2020).

the First RFP" by August 22, 2010, or else Respondent "is highly likely to face a finding of contempt and the imposition of sanctions."  Exhibit B.

In her May 18, 2020 Order, the District Judge explained that "the Magistrate Judge sought to establish a reasonable step-by-step discovery process."  ECF 133 at 8.  In particular, the District Judge cited Your Honor's Order that "the parties undertake an effort to meet and confer in . . . a renewed effort to agree upon limits of either the number of requests or the definitions."  *Id*. at 4.  Accordingly, on June 2, 2020, Respondent responded by letter to Petitioners' demand.  *See* Exhibit C.  Respondent wrote, "Now that the district court has issued its ruling, we need to meet and confer to discuss the scope of the document requests."  *Id*.  Respondent invited Petitioners to meet and confer the afternoon of June 9, 2020, but if that time did not work, Respondent stated that Petitioners should "propose an alternative time."  *Id*.

Petitioners, however, refused to meet and confer with Respondent.  Instead, on June 4, 2020, Petitioners served a Second Set of Interrogatories.  *See* Exhibit D.  Respondent will respond to these further discovery requests by the deadline prescribed the Federal Rules of Civil Procedure, *i.e.*, July 6, 2020.  Also, on June 4, 2020, Petitioners responded to Respondent's previous letter, stating that the time to meet and confer had ended, and that they would not meet and confer until Respondent first provided "a written counterproposal" to their August 22, 2019 proposal to "narrow" the document requests.  *Id*.  This demand ignored the fact that Respondent had already provided a written counterproposal on September 9, 2019, which proposed to "undertake a reasonable search to produce any non-privileged documents" relevant to any property that could be attached to satisfy this Court's Judgment.  *See* ECF 118-2 at 3.  Respondent identified eight specific document requests that were directed at identifying property in the United States belonging to Respondent, and it agreed to respond to those requests.  *Id*.

Petitioners rejected that proposal out-of-hand at the time, and instead have repeatedly (and falsely) accused Respondent of refusing to engage in the discovery process.  In their June 6, 2020 letter, Petitioners also mischaracterized the August 13, 2019 Minute Order, claiming that this Court ordered Respondent to fully comply with their original 182 document requests – which the District Judge has now characterized as "unduly long" (*see* ECF 133 at 9) and which Petitioners themselves conceded were overbroad (*see* ECF 117-10 at 6:14-18) – unless the parties agreed on a narrowed set of requests.  Petitioners threatened to "take matters up with the Court on an urgent basis" if Respondent did not provide a written counterproposal in two business days.  *Id*. Petitioners also demanded that Respondent further respond to their discovery requests by **August 22, 2020**.

On June 8, 2020, Respondent agreed to provide a written counterproposal by June 11, 2020.  *See* Exhibit E.  Respondent noted that Petitioners continued to mischaracterize this Court's August 13, 2019  Minute Order.  This Court ordered that the parties meet and confer and "that respondent produce the documents responsive to the remaining request[s] for production of documents by November 8th."  ECF 116 at 41.  The context of the August 12, 2019 hearing transcript makes it clear that the "remaining requests" means those that "remain" after the meet-and-confer process.  As Respondent explained to Petitioners in its June 8, 2020 letter, "the 'remaining requests' cannot mean the entirety of your clients' original document requests – otherwise, the parties would not have been ordered to meet and confer, which we are now trying to do despite your intransigence."  Exhibit E.

In its June 11, 2020 counter-proposal, Respondent again offered to meet and confer to discuss the discovery requests, as this Court ordered.  *See* Exhibit F.  In light of this Court's recent guidance that denied discovery regarding information "that would not shed any light on

the extent to which Respondent has attachable assets in the United States," Respondent proposed

the following:

> Accordingly, our counter-proposal is that <u>we now must meet and confer</u> regarding your clients' revised document requests dated August 23, 2019, consistent with the Court's definition of the proper scope of discovery.  To the extent we agree on a particular request, <u>we will respond to it by August 22, 2020, as you have requested</u>.  To the extent we disagree, we will have to seek guidance from Magistrate Judge Robinson on how to resolve any such disagreement.

*Id*. (emphasis added).

However, on June 16, 2020, Petitioners again refused to meet and confer with

Respondent in good faith or to even respond to Respondent's proposal to search for relevant

documents.  *See* Exhibit G.  Instead, they falsely claimed that Respondent had not put forward a

"concrete proposal for document production," which ignored Respondent's June 11, 2020

counter-proposal and its earlier September 9, 2019 counter-proposal.  Petitioners further stated

that in their submissions to the Court they would blame Respondent for refusing "to engage in

good faith in the meet and confer process" and would "raise the issue of the ROK's

noncompliance with the August 13, 2019 order with Magistrate Judge Robinson."  *Id*.

Having twice now rejected Respondent's proposal to meet and confer **_and_** to perform a

diligent search documents relevant to any attachable property, it is clear that Petitioners have no

interest in pursuing legitimate discovery within the limits set forth by Rules 26 and 69 of the

Federal Rules of Civil Procedure, and as reinforced by the District Judge's May 18, 2020 Order

and Your Honor's June 5, 2020 Order.  Nevertheless, despite Petitioners' intransigence and their

bad-faith refusal to meet and confer, Respondent will perform a diligent search for any relevant

documents and, as promised, will respond by August 22, 2020.  To effectuate that process,

Respondent respectfully requests, pursuant to LCvR 7(m), that the Court order Petitioners to

meet and confer with Respondent by June 26, 2020 regarding their 40 revised document requests

in a "good-faith effort … to narrow the areas of disagreement."


Dated: June 19, 2020                                                Respectfully submitted,

/s/    James E. Berger                                            /s/   Matthew H. Kirtland
James E. Berger (DC Bar No. 481408)             Matthew H. Kirtland (DC Bar No. 456006)
Charlene C. Sun (DC Bar No. 1027854)          Michael Bhargava (DC Bar No. 978078)
KING & SPALDING LLP                                    NORTON ROSE FULBRIGHT US LLP
1185 Avenue of the Americas                           799 9th St. NW
New York, NY 10036                                        Washington, D.C. 20001
Tel: (212) 556-2100                                           Tel: (202) 661-0200
Fax: (212) 556-2222                                          Fax: (202) 662-4643
jberger@kslaw.com                                          matthew.kirtland@nortonrosefulbright.com
csun@kslaw.com                                              michael.barghava@nortonrosefulbright.com

*Attorneys for Petitioners*                                  *Counsel   for   Respondent   Republic   of*
                                                                         *Kazakhstan*