```
            IN THE UNITED STATES DISTRICT COURT
               FOR THE DISTRICT OF COLUMBIA


   Anatolie Stati, et al.,      ) Civil Action
                                 ) No. 14-cv-1638
              Plaintiffs,        )
                                 ) TELEPHONE CONFERENCE
   vs.                           ) CALL
                                 )
   Republic of Kazakhstan,       ) Washington, DC
                                 ) July 26, 2021
              Defendant.         ) Time:  2:00 p.m.
   _____

            TRANSCRIPT OF TELEPHONE CONFERENCE CALL
                         HELD BEFORE
            THE HONORABLE JUDGE AMY BERMAN JACKSON
                 UNITED STATES DISTRICT JUDGE
   _____

                     A P P E A R A N C E S

   For the Plaintiff:     James Berger
                          Charlene Sun
                          Reginald Smith
                          Thomas Childs
                          King & Spalding, LLP
                          1185 Avenue of the Americas
                          New York, NY  10036
                          (212)556-2202

   For the Defendant:     Matthew Kirtland
                          Esha Kamboj
                          Norton Rose Fulbright US, LLP
                          799 9th Street, NW
                          Suite 1000
                          Washington, DC  20001
                          (202) 662-4659

   _____

   Court Reporter:        Janice E. Dickman, RMR, CRR, CRC
                          Official Court Reporter
                          United States Courthouse, Room 6523
                          333 Constitution Avenue, NW
                          Washington, DC  20001
                          202-354-3267
```

```
 1                THE COURTROOM DEPUTY:  Good afternoon, Your Honor.
 2    Good afternoon to counsel.
 3                Your Honor, this is a telephone conference call,
 4    civil action No. 14-1638, Anatolie Stati, et al., the
 5    petitioners, versus the Republic of Kazakhstan, the respondent.
 6                Will speaking counsel for the petitioners please
 7    identify himself and his colleagues for the record?
 8                MR. BERGER:  Yes.  Thank you, Mr. Haley.  Good
 9    afternoon, Your Honor.  This is James Berger of King &
10    Spalding, counsel for the petitioners here.  And I'm joined on
11    the line today by Charlene Sun, Reginald Smith, and Thomas
12    Childs.
13                THE COURT:  All right.  Good afternoon.
14                THE COURTROOM DEPUTY:  Counsel for the respondent.
15                MR. KIRTLAND:  Thank you, Mr. Haley.  Good afternoon,
16    Your Honor.  This is Matthew Kirtland with Norton Rose
17    Fulbright, here in Washington.  And with me today in my office
18    is my associate Esha Kamboj.  Thank you.
19                THE COURT:  All right.  I appreciate everyone
20    gathering so quickly on such short notice, but I wanted to talk
21    about a few things before we went further, in terms of a
22    schedule in this case.  First of all, I guess the most notable
23    thing about petitioners' pleading is that it is denoted as an
24    emergency motion.  And so I wanted to start, because I'm not
25    sure I understand what the emergency is or if there is some
```

1    particular legal basis for the request for expedited treatment
2    or interim relief while we are figuring out the merits.
3           MR. BERGER:  Thank you, Your Honor.  This is James
4    Berger.  And the way I would put it is that there's no present
5    emergency, but in the absence of interim relief, it would be
6    possible, with respect to the Republic, to sell this property
7    before the Court could reach the issues that are raised by the
8    motion.  So in view of that and in view of the fact that
9    execution motions and enforcement motions are typically brought
10   up -- well, they're very often brought up by ex parte motions,
11   we didn't do that here, obviously.
12          But we are concerned that property could be sold, and
13   if we were to simply make a notice of motion and have it
14   adjudicated on a typical district court timeframe, that in the
15   meantime the Republic could sell the property.  And so we
16   wanted to raise that concern through our motion papers.  We
17   called it an emergency motion.  I think we did that in lieu of
18   proceeding ex parte.
19          But that's the crux of what we're trying to fend off
20   here, is any expedited transaction by which the Republic could
21   attempt to dispose of this property before the Court has a
22   chance to rule on whether or not it is subject to execution.
23          THE COURT:  Well, wouldn't a lien solve the interim
24   problem?
25          MR. BERGER:  James Berger, again.  Yes, Your Honor,

1  it would, but we view ourselves as requiring leave to file that
2  motion.  I don't know that we could unilaterally go down to the
3  recorder of deeds in the District and file a lien on a property
4  that is owned by a foreign sovereign without prior leave of the
5  Court.  Maybe we could, maybe we couldn't.  I don't think, in
6  my time of litigating FSI issues, I don't think that's
7  something that we felt comfortable doing.  So --
8              THE COURT:  That's the barrier, the FSIA, not the --
9  the D.C. Code provision that you cited, D.C. Code § 15-102,
10 basically says that a final judgment from this Court or a
11 Superior Court shall be a lien once it's filed with the
12 recorder of deeds.  It doesn't say you have to get the
13 permission of the judge to sign the judgment.
14             So the reason you think you need the approval by the
15 Court is because of FSIA, not because you need Court approval
16 to get a lien if you're the holder of a judgment?
17             MR. BERGER:  And this is James Berger, Your Honor.
18 That's correct.  The FSI forms an overlay over everything
19 that's provided for, informs state law.  And, again, if we
20 filed that -- you know, if we filed the judgment with the
21 recorder of deeds, it is going to self-execute into a claim on
22 title on this property.  And again, we thought it prudent to
23 come to Your Honor before we go ahead and simply do that.
24             THE COURT:  All right. But assuming -- let's say you
25 filed a lien without my permission and it was improper, isn't

1   the way to tee that up, that that they would then move for
2   relief from the lien as being improperly filed?
3               MR. BERGER:  This is James Berger.  Perhaps that
4   would be correct.  When we've done this in other cases -- and
5   there are other, sort of, ex parte or self-executing measures
6   that we can take under other state enforcement provisions -- we
7   have always taken a position that it makes sense to go to the
8   Court beforehand.
9               And what we've done in those other cases, Your Honor,
10  is to go to the Court ex parte.  For example, I think you
11  know --
12              THE COURT:  All right.  Well, we're not ex parte and
13  I don't think I would have supported ex parte, since we know
14  that the other side is represented and you've already said
15  there's no actual emergency, you're talking -- there's no
16  evidence that money or assets are being dissipated; you want to
17  prevent that from happening in the future.  So I don't know
18  what federal rule would have authorized ex parte proceedings,
19  but we're not having one anyway.  So, that's kind of neither
20  here nor there.
21              I guess what I'm trying to find out is, these are
22  complicated issues and they do need to be fully briefed and
23  considered, and considered with the time to get it right, along
24  with everything else that's in my docket, or if I referred it
25  to the magistrate judge, on his docket.  And it seems like

1  ordering them not to sell it in the meantime is an
2  extraordinary sort of relief.  But saying -- that having a
3  lien, seems to me, to be what it is that you need in the event
4  they suddenly up and managed to sell it before we had an
5  opportunity to determine whether you're entitled to some of the
6  proceeds.
7  　　　　　And I don't see why they should have to, on an
8  expedited basis, respond to this without having the opportunity
9  to really brief it up and think about it, or why we should have
10  to rule on it on an expedited basis, since there's no
11  indication that anybody is trying to sell this property.
12  　　　　　What is the -- R of K's point of view about whether
13  Court approval would be needed to file a judgment from this
14  Court with the recorder of deeds for a property in the District
15  of Columbia, if the property is owned by a foreign entity?
16  　　　　　MR. KIRTLAND:  Thank you, Your Honor.  This is
17  Matthew Kirtland.
18  　　　　　There's a point that we'll make on the merits that I
19  think will moot this discussion.  But, Mr. Berger is correct,
20  that under the Foreign Sovereign Immunities Act the way that
21  it's been interpreted in the practice is that establishing such
22  a lien does require approval under 1610(c) of the Foreign
23  Sovereign Immunities Act, approval by the Court.  And so a lien
24  cannot be recorded without Court approval because the lien
25  affects an interest in the property.

1          There is no basis for emergency relief of any kind
2    because there's no evidence that my client intends to sell this
3    property, nor, as a matter of fact, is it in the process of
4    selling it, nor is he going to sell it.  But as I said at the
5    beginning, Your Honor, there's a point that I would like to
6    come to on the merits that I think will moot any discussion of
7    liens or even this question of an emergency.
8          THE COURT:  All right.  Well, in the -- I'll get to
9    that in a second.  When you say FSIA's practice, which is the
10   same thing that petitioners' lawyer talked about, I know that
11   there was a Supreme Court case upholding a lien filed by the
12   state of New York.  Did the state of New York get district
13   court permission before it filed the lien?  Is that what the
14   issue was that made its way up to the Supreme Court?  Or was it
15   when they sought relief from it that made its way to the
16   Supreme Court?
17         MR. KIRTLAND:  Your Honor, I'm not -- I don't have
18   the facts of that New York case at hand.  What I mean by
19   practice, is that in my experience sometimes when the judgment
20   creditor files a lien on -- or, takes any execution measures
21   against property of a foreign sovereign without the requisite
22   approval under 1610(c), I've seen contempt proceedings
23   initiated in response because 1610(c) approval is required.
24         MR. BERGER:  Your Honor, James Berger.  I just -- I
25   would like to point out, we have 1610(c) approval.  But, I

1  agree with Mr. Kirtland, it's a matter of prudence, I think, in
2  handling these cases.  And I would suspect, and part of what
3  led us to proceed as we did, was a concern on the part of the
4  Court -- or, on the part of our clients, I'm sorry, and us, as
5  counsel, that if we did this without coming to the Court first,
6  that we would be faced with ten motions or more, Rule 11 motion
7  or something.  It seemed to us better practice to raise these
8  issues before the Court before we went ahead and did it.
9           THE COURT:  I'm not opposed to anyone being cautious,
10 I'm just trying to figure out what the obligations are on me at
11 this point and what the appropriate response to all this is.
12 When you say 1610(c) approval, you already have it.  Are you
13 talking -- § 1610(c) of what?
14          MR. BERGER:  I'm sorry.  This is James Berger, Your
15 Honor.  I'm sorry for giving only the shorthand.  It's 1610(c),
16 18 U.S.C. 1610(c), it's the provision of the Foreign Sovereign
17 Immunities Act that requires us to obtain a finding from the
18 Court that sufficient time has elapsed following the entry of
19 judgment for us to proceed with enforcement measures.  So we
20 have that from Your Honor, you granted that.
21          THE COURT:  Enforcement measures in general, as
22 opposed to against their diplomatic property, or alleged
23 diplomatic property.  Okay.
24          So, Mr. Kirtland, what is the piece of information
25 that is going to solve the situation?

1          MR. KIRTLAND:  Thank you, Your Honor.  This is
2  Mr. Kirtland.  And we're repeating our names, Your Honor,
3  because your courtroom deputy asked us to, which is perfectly
4  fine.  I just didn't want you to think I'm needlessly repeating
5  my name.
6          The piece of information, Your Honor, is that the
7  Stati motion is based on the representation to the Court that
8  is objectively false.  This property at 1509 O Street is not,
9  as they say, currently being used as office space by two
10 private commercial enterprises.  We got the motion, through
11 simple Google searches I was able to verify that, within a
12 matter of hours, they identify, Your Honor, two companies.
13 Modern Style Construction.  We Googled that name, it has a
14 website.  The telephone number on the website is a Maryland
15 telephone number, the address listed on the website is a
16 Maryland address.
17         Nowhere on the website does it say that it's
18 operating from 1529 O Street.  The Google results, Google maps,
19 shows that it has a business address in Silver Spring,
20 Maryland.  If you go on the secretary of state website for
21 Maryland and DC, it confirms it only operates from Maryland.  I
22 called the telephone number on the website, the owner, this
23 person who is identified in the Stati motion papers, Mr. Sergei
24 Tsoy, T-S-O-Y, called me back within the hour.  I asked him the
25 question:  Are you operating or have you ever operated from

1   this address?  He confirmed that he owns the company, he has
2   always owned the company, that they have never operated from
3   any address in Washington, D.C., much less 1529 O Street.
4         I asked him if he knew anything about this Russian
5   with Natalia company.  That's the second company that Stati
6   identified in their papers.  He said this was a
7   learn-Russia-in-your-house service that his wife Natalia ran a
8   few years ago from their home in Potomac, Maryland.  He
9   confirmed that it had never operated out of 1529 O Street, or
10  any other business address in Washington, D.C.
11        We are getting affidavits to confirm this.  I
12  contacted my client, of course, Your Honor.  The embassy
13  confirmed that this building, which is a row house -- I also
14  drove by it myself when I got the motion -- it's right there on
15  the embassy, Your Honor.  It's used as the residence for three
16  members on the staff of the embassy, the housekeeper, and sort
17  of a book -- a chauffeur.  It's never been used as office
18  space.  And so, this factual assertion, this representation to
19  the Court the Statis make throughout their papers, it's not
20  only false, Your Honor, but it was confirmed false within a
21  matter of hours.
22        So, we haven't had the time to put the papers
23  together because we are actively engaged in a briefing in a
24  related case, as counsel for the Statis well knows, up in
25  New York.  And for reasons that we'll set out in our papers,

1       Your Honor, we view this filing as vexatious.  The timing of it
2       is highly suspicious.  The Statis have known about this
3       property since we disclosed it in December of 2020.  No
4       questions have been asked to us.  All of this information is
5       public.  And with the bear minimum of inquiry, much less the
6       reasonable inquiry required by Rule 11, all this was shown to
7       be false.
8                   THE COURT:  I don't want to hear anything about Rule
9       11 in your opposition to their motions.  Okay?  We have to
10      litigate the motion before we start in on whether it was filed
11      in good faith or bad faith or vexatious or whatever else.  This
12      happens repeated with these parties and I'm not going there
13      unless and until this motion has been ruled upon, and then I --
14      we can set up a briefing schedule, if you're still interested
15      in a sanctions motion, but don't combine it with your pleading.
16      I want to deal with the motion on the merits first, before I
17      start dealing with disagreements between the lawyers and the
18      party.
19                  MR. KIRTLAND:  Thank you, Your Honor.
20                  MR. BERGER:  Your Honor, this is James Berger.  Can I
21      address that very briefly?
22                  THE COURT:  Yes.
23                  MR. BERGER:  So for the point the defense just made
24      or the suggestion that these allegations are false, the
25      evidence that we relied upon was put before the Court and it's

1    attached to our motion.  We have seen --
2           THE COURT:  I don't -- I don't want to get into
3    whether you filed this in good faith or bad faith.  I just said
4    that to the other side.  This could be false, they could be
5    wrong.  They could be untrue.  That's the issue that I want to
6    deal with.  So, you don't have to defend yourself about the
7    allegations that it's Rule 11 right now.  Okay?  Every motion
8    we have in this case ends up being a motion about the motion,
9    and I'm not going to do it this tame.  I think it's premature
10   to go there.
11          The question is, I pretty much arbitrarily picked
12   August 2nd as a date for your opposition.  Is that an
13   appropriate date for the respondent to oppose this?  Do you
14   need more time?  Can you do it sooner?  What's your point of
15   view?
16          MR. KIRTLAND:  Thank you, Your Honor.  This is
17   Mr. Kirtland.  I expect we'll be able to file on or before
18   August 2.
19          THE COURT:  All right.  And then petitioners will
20   have a week to file a reply, if they have something new to say,
21   and they can do that.  In the meantime, I find it unlikely that
22   the property is going to be sold before we resolve whether it
23   is being utilized by a commercial entity or not.  If it's not,
24   then it might take me longer to figure out all the other
25   questions about whether it can be attached.  But that seems --

```
 1    that's either a yes or no question that we should be able to
 2    get to the bottom of quickly.  And given the sovereign immunity
 3    issues related to liens and the fact that I would have to hear
 4    both sides' point of view about whether the lien is appropriate
 5    in order to even decide whether you can file a judgment lien --
 6    which I really thought you could do without my permission --
 7    but if nobody wants me to say that's the way it is, then you
 8    know more about foreign sovereign immunity litigation this
 9    particular moment than I do.
10              I think that even that level of interim relief is
11    premature.  However, I will order the respondent to inform the
12    Court if -- within one business day, if at any point the
13    respondent determines that it intends to sell the property.
14    And the property doesn't -- doesn't have to be listed, because
15    it could easily be done privately.  But I need to be informed
16    if they are planning to sell it before the sale takes place so
17    then we can decide if a lien is necessary.
18              Is there any reason why the respondent can't comply
19    with that?
20              MR. KIRTLAND:  No, Your Honor.
21              THE COURT:  All right.  I don't see how, frankly, I
22    can go further and grant the relief that the Stati parties are
23    asking for, given the factual dispute about the nature of the
24    property.  What's your response to that, Mr. Berger?
25              MR. BERGER:  Your Honor, this is James Berger.  Your
```

```
 1   Honor, in view of the condition that you just proposed, I think
 2   that that would be fine.  As I mentioned earlier, our main
 3   concern is that the property could be disposed of prior to the
 4   Court taking action.  If respondents are ordered to notify the
 5   Court of any attempt to dispose of the property, I think that
 6   would solve that problem.  So we would be fine with that.
 7           THE COURT:  All right.  So, they're going to file
 8   what they're going to file, you'll get a chance to reply, and
 9   then we'll see where we go from there.  If -- I'm not
10   suggesting that no research was done that led the petitioners
11   to make the allegations they made.
12           Once they receive what respondents say in response, I
13   think it's incumbent upon them to determine whether they still
14   want to go forward or if they think the response is flawed in
15   some way, but we won't know that until we get the response.
16   And so let's get to the bottom of this and leave Rule 11 out of
17   it for now and we'll figure out where we are after we see what
18   gets filed.
19           All right.  Is there anything further I need to take
20   up right now on behalf of the petitioner?
21           MR. BERGER:  This is James Berger.  Your Honor, the
22   only point that I would make, you asked -- or, you've put the
23   issue of reply earlier to something, whether it's required, and
24   after we see what the Republic files, whether or not that's
25   something we still want to do.  We're continuing to collect
```

```
 1    facts about this, things are happening now.  I think I can say
 2    with some degree of certainty that we're going to want to file
 3    a reply here.
 4              THE COURT:  All right.  I figured that was highly
 5    likely.  Is a week after their opposition enough for you?
 6              MR. BERGER:  Inasmuch as that's what -- I think
 7    that's what they got -- or, a little bit more than that.  A
 8    week should be fine.  I'm on vacation right now, so that's
 9    slowing our operations now.
10              THE COURT:  All right.  You're the one who filed
11    something and said it was an emergency.
12              MR. BERGER:  I know.
13              THE COURT:  So if you get what they file and you need
14    more time, then you can seek additional time.
15              MR. BERGER:  Very well.
16              THE COURT:  Or you can ask me for additional time
17    now.  I'm not in a rush.
18              MR. BERGER:  If we could have ten days, that might be
19    helpful, Your Honor.
20              THE COURT:  All right. All right.  That's fine with
21    me.  And the same thing goes for the respondents, if it turns
22    out that the date I set that you still think is appropriate,
23    you need more time to put together what you think is going to
24    be dispositive, then you can seek a continuance as well.  You
25    all know that usually those get turned around pretty fast in my
```

```
 1    office.
 2              MR. BERGER:  Thank you, Your Honor.
 3              THE COURT:  All right.  Okay.
 4              MR. KIRTLAND:  Thank you.
 5              THE COURT:  I appreciate it.  This is illuminating
 6    and I will read everything that everybody files.
 7              UNIDENTIFIED SPEAKER:  Thank you, Your Honor.  Have a
 8    good day.
 9                              *   *   *
```

CERTIFICATE OF OFFICIAL COURT REPORTER

I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 27th day of July, 2021

_____

Janice E. Dickman, CRR, CMR, CCR
Official Court Reporter
Room 6523
333 Constitution Avenue, N.W.
Washington, D.C.  20001

This hearing was held telephonically in compliance with the COVID-19 pandemic stay-at-home orders and is, therefore, subject to the limitations associated with the use of current technology, including but not limited to telephone signal interference, static, signal interruptions, and other restrictions and limitations associated with remote court reporting via telephone, speakerphone, and/or videoconferencing.