# EXHIBIT A

```
 1                 IN THE UNITED STATES DISTRICT COURT
                      FOR THE DISTRICT OF COLUMBIA
 2

 3    Anatolie Stati, et al.,        ) Civil Action
                                     ) No. 14-CV-1638
 4                      Plaintiffs,  )
                                     ) TELEPHONIC STATUS
 5    vs.                            ) CONFERENCE
                                     )
 6    Republic of Kazakhstan,        ) Washington, DC
                                     ) August 10, 2020
 7                      Defendant.   ) Time:  10:00 a.m.
      _____
 8
              TRANSCRIPT OF TELEPHONIC STATUS CONFERENCE
 9                          HELD BEFORE
            THE HONORABLE JUDGE AMY BERMAN JACKSON
10                  UNITED STATES DISTRICT JUDGE
      _____
11
                       A P P E A R A N C E S
12
      For Plaintiffs:     James E. Berger
13                        Charlene C. Sun
                          KING & SPALDING LLP
14                        1185 Avenue of the Americas
                          New York, NY 10036
15                        (212) 556-2202
                          Email: Jberger@kslaw.com
16                        Email: Csun@kslaw.com

17    For Defendant:      Matthew H. Kirtland
                          Michael Bhargava
18                        NORTON ROSE FULBRIGHT US LLP
                          799 9th Street, NW, Suite 1000
19                        Washington, DC 20001
                          (202) 662-4659
20                        Email:
                            Matthew.kirtland@nortonrosefulbright.com
21                        Email:
                            Michael.bhargava@nortonrosefulbright.com
22

23    Court Reporter:        Janice E. Dickman, RMR, CRR, CRC
                             Official Court Reporter
24                           United States Courthouse, Room 6523
                             333 Constitution Avenue, NW
25                           Washington, DC  20001
                             202-354-3267
```

1          THE COURTROOM DEPUTY:  Good morning, Your Honor.

2     Your Honor, this is civil case No. 14-1638, Anatolie Stati,

3     et al., versus the Republic of Kazakhstan.

4          Will speaking counsel for the plaintiff parties

5     please identify himself and colleague for the record.

6          MR. BERGER:  Good morning, Your Honor.  Good morning

7     Mr. Haley.  This is James Burger of King & Spalding for the

8     petitioners Stati.  And I'm joined on the line by Charlene Sun,

9     also of King & Spalding for the petitioners.

10          THE COURT:  All right.  Good morning.

11          THE COURTROOM DEPUTY:  Will counsel for the Republic

12     of Kazakhstan please identify himself and colleague for the

13     record.

14          MR. KIRTLAND:  Good morning, Your Honor.  Good

15     morning, Mr. Haley.  This is Matthew Kirtland for respondent

16     Republic of Kazakhstan.  With me on the line today is my

17     colleague Michael Bhargava.  Thank you.

18          THE COURT:  All right.  Good morning.  Pending before

19     the Court is another appeal filed by the respondent Republic of

20     Kazakhstan of an order issued by the magistrate judge in the

21     long-running post-judgment discovery dispute in this case.  I

22     decided to issue my opinion orally instead of in writing

23     because I have a lot to say.

24          I will summarize this in a minute order with the

25     dates and the particulars, but this will be my ruling.  And I'm

1    proceeding in this manner because I didn't think that I could

2    convey the emphasis that I wanted to convey on paper.  And I

3    have serious concerns about the way this case has been

4    conducted to date.

5            I understand a great deal of money is at stake and

6    it's of great importance to the parties.  And I don't know, at

7    the end of the day, if the problem lies with the parties or it

8    lies with the lawyers.  But this case has been marred from the

9    beginning by unnecessary contentiousness and, really, that's

10   putting it mildly.

11           At every turn I've had to deal with the unnecessary

12   length and number of pleadings, the repetition of arguments,

13   even after they've been fully briefed and rejected; pleadings

14   full of posturing and personal attacks, the utterly

15   unsubstantiated and legally insupportable RICO action based on

16   the Stati parties' filing of the petition to enforce the

17   arbitral award in the first place.

18           Don't get me wrong, the Republic of Kazakhstan had

19   every right to litigate the petition to confirm the arbitral

20   award, and they had every right to appeal my decision.  But

21   those proceedings are over.  These are post-judgment

22   proceedings.  And the Republic of Kazakhstan and its counsel

23   needs to get that into their heads because the level of

24   intransigence that we've seen to date is not acceptable and it

25   officially ends today.

1          And the Stati lawyers should not be smiling right now

2     because when I'm talking about the manner in which this case is

3     being litigated, I'm talking to you, too.  I can tell you that

4     what I'm about to say I've never had to say in any case.  But

5     first I want to go over the history of these proceedings and

6     how we got here.

7          The Stati parties' petition to confirm an

8     international arbitral award obtained in Sweden was filed in

9     this court in September of 2014.  After many pleadings,

10     oppositions, replies, and always surreplies, after motions to

11     strike the pleadings, rulings on the pleadings, motions to

12     reconsider the rulings on the pleadings, the Court confirmed

13     the award on March 23rd, 2018.  That order is at Docket 69, my

14     memorandum opinion Docket 70.

15          On May 1st, 2018 the petitioner served post-judgment

16     discovery on Kazakhstan in an effort to enforce the award,

17     including a request for the production of documents, which is

18     at Docket 117-3.  After that, nothing happened.

19          Petitioner filed a motion to compel, Docket 81, and

20     Kazakhstan filed a motion to strike the motion, which was

21     Docket 81, and a motion for protective order against the

22     request for production and seeking to quash deposition notices,

23     that was Docket 86, along with the motion to stay execution of

24     the judgment altogether; oh, but without having to post a bond,

25     like everyone else.  That was Docket 83.

1          Respondent did not confer with petitioners about

2     narrowing the requests before filing its motion, and produced

3     no documents to petitioners at that time.  Meanwhile, the Stati

4     parties moved to execute on the judgment, Docket 73.  Docket

5     73.

6          So on November 13, 2018 -- 2018 -- I ordered the

7     parties to meet and confer in an effort to resolve the

8     discovery disputes and said what you can't resolve among

9     yourselves is going to be referred to the magistrate judge for

10     resolution.  I was not aware at that time that the words "meet

11     and confer" -- despite their prominence in this court's local

12     rules, despite the fact that the attorneys on this case are all

13     members of the bar of this court -- hold no particular meaning

14     for this group at all.

15          On November 30th, 2018, Docket 95, Kazakhstan took

16     the position that it wouldn't participate in discovery, so on

17     December 4, 2018 I referred the motion to compel, Docket 81,

18     and the motion for protective order, Docket 86, to the

19     magistrate judge for decision.

20          On May 31st, 2019 she ordered that the 30(b)(6)

21     deposition take place.  After that was over, on July 16, 2019,

22     Kazakhstan filed another motion for protective order, Docket

23     113, and they said, well, our deponent said we don't have any

24     assets in the United States, so that's the end of that.  But

25     there's no rule of procedure that requires those statements to

1    good untested.  And on August 12th, 2019, the magistrate

2    judge -- who was duly appointed by the judges of this court --

3    held a hearing and denied respondent's motion, ordering

4    Kazakhstan to produce documents to petitioner by November 8th,

5    2019.  And then she said, specifically, the next step would be

6    that respondent produce the documents responsive to the

7    petitioners' request for reproduction of documents.  The Court

8    orders that the parties undertake an effort to meet and confer

9    in a renewed effort to agree upon limits of either the number

10   of requests or the definitions.

11        That order was put in writing in a minute order the

12   following day, August 13, 2018.  The magistrate judge said:  It

13   is further ordered that counsel shall, beginning as soon as

14   practical and concluding by August 30th, 2019, meet and confer

15   in an effort to limit the number of, and the definitions

16   accompanying, the petitioners' requests for the production of

17   documents.  It is further ordered that counsel shall jointly

18   file a status report by no later than September 9, 2019.  It is

19   further ordered that respondent shall produce the documents

20   responsive to the remaining requests by no later than November

21   8, 2019.  And she set a status hearing for November 13, 2019.

22        The meet and confer was supposed to begin at once and

23   conclude by August 30th.  It wasn't a request.  It wasn't

24   optional.  It was an order.  And the results of the meet and

25   confer were supposed to be reported on September 9.

1          Shortly thereafter, on August 23rd, 2019, petitioners

2     sent a significantly slimmed-down version of its request for

3     production to respondent.  It reduced 182 requests down to 40.

4     Now, that was a good first step.  But this is where you have to

5     question the judgment and the lawyering that's going on on both

6     sides.  Was there a legitimate justification for 182 requests

7     for production in the first place?  Were you billing your

8     clients by the request?

9          It's all very troubling.  But, petitioners managed to

10    jettison 142 of the requests, and it provided $100,000 --

11    $100,000 threshold on the value of the assets involved, it

12    shortened the time period involved, it reduced the number of

13    foreign countries involved and the number of entities that

14    could be defined as instrumentalities of the respondent whose

15    documents were being requested.

16          That's all set out in the status report from

17    September 9 at Docket 118.  And that's all good.  It probably

18    could have been accomplished a long time before that, but at

19    least one side was taking steps consistent with the magistrate

20    judge's direction.

21          Meanwhile, on August 27, Kazakhstan filed objections

22    to the magistrate judge's order denying the motion for

23    protective order and they appealed her order to this Court.

24    That was Docket 117.

25          And on the last day of the meet and confer period,

1    Kazakhstan's lawyers told Stati's lawyers:  Wait.  What order?

2    We don't have to comply with an order.  We don't have to

3    participate in discovery at all until the appeal gets resolved.

4    And that's reflected in Exhibit B to Docket 118, found at

5    Docket 118-2.

6         They thought better of that because at the last

7    minute, on September 9th, the day the status report was due,

8    Kazakhstan offered to undertake a reasonable search to produce

9    documents responsive to eight of the document requests -- those

10   limited to assets within the United States -- but only if Stati

11   would agree to stay the rest of the discovery pending the

12   appeal of the magistrate judge's order.  That's Docket 118-2 at

13   page 5.  And they said if you don't do that, we're going to

14   move to stay.

15        Petitioners declined because respondent had never

16   conferred to narrow the request for production and respondent

17   never produced any documents.  But, Kazakhstan never went on to

18   ask the Court for a stay.

19        On November 7th, 2019 the magistrate judge postponed

20   the previously scheduled hearing on the status of discovery

21   until after I ruled on the appeal.  And we know from exhibits

22   attached to a later status report, Docket 136, that on November

23   8th, 2019 Kazakhstan stuck by its position that it didn't have

24   to do anything until after I ruled on the proper scope of

25   discovery.  Stati responded, Well, but the magistrate judge

1    didn't stay anything.  And so, meanwhile, with the court order

2    outstanding, neither the Republic of Kazakhstan nor its

3    attorneys seemed to care.

4         On December 2nd, 2019, while the appeal was still

5    pending, the Stati parties filed a motion for sanctions and to

6    hold Kazakhstan in contempt, noting, Well, gee, there's been no

7    stay pending appeal, no meet and confer, no documents produced,

8    even related to assets in the United States.  That's Docket

9    129, it's pending.  The magistrate judge stayed consideration

10   of it.

11        On May 18th, 2020, Docket 133, this Court decided the

12   appeal.  I upheld the August 13 denial of the motion for

13   protective order.  Kazakhstan doesn't seem to realize that.  I

14   upheld the denial of the motion for protective order.  On page

15   7 of my order I ruled the petitioners' efforts to identify

16   where Kazakhstan may be holding property subject to execution

17   was appropriate.  I noted, among other things, that the

18   magistrate judge sought to establish a reasonable step-by-step

19   discovery process, but it was nowhere near complete.

20        So what happened then?  Kazakhstan didn't like the

21   magistrate judge's order, but now it had one from me.  Did some

22   documents change hands?  I thought I'd resolved things, but I

23   guess not.  This time the foolishness started with the Stati

24   parties.

25        On May 22nd, Docket 136-2, they sent a communication

1   that said, Given the Republic of Kazakhstan's failure to accept

2   the narrowed requests for production, it's now obligated to

3   respond to the first set, the 182.  I've never heard of such a

4   thing.  You narrowed your request; the new set is now the

5   requests.

6          On May 29th the Stati parties wrote to Kazakhstan's

7   lawyers again, saying, Are you going to respond?  Are you going

8   to say anything?  Finally, on June 2nd, two weeks after the

9   Stati parties' letter, Kazakhstan responds.  It says, Well, we

10  were not able to agree on a set of narrow discovery requests

11  because we were pursuing an appeal.  Not able?  Please.  What

12  does that even mean?  Why does the pendency of the appeal

13  impede your ability to have a conversation?

14         Kazakhstan also said, And we disagree with your

15  characterization of the state of the record and the magistrate

16  judge's order.  She didn't order us to produce any documents.

17         Now, this took me by surprise because she said, It is

18  further ordered that.  And if there was no order calling for

19  you to do something, then what were you appealing?

20         But in any event, Kazakhstan said we need to meet and

21  confer because that's what the magistrate judge ordered us to

22  do way back when.  So on June 4th the Stati parties reply,

23  Docket 136-4, and they say, We disagree with your

24  characterization of the magistrate judge's order, but sure, go

25  ahead and submit a counterproposal to our already substantially

1    narrowed request for production.  Oh, and here's some

2    interrogatories.

3            On June 5th, in a minute order, the magistrate judge

4    ordered the parties to file a status report in which

5    respondent's compliance with the discovery request would be

6    addressed, and to do so by June 19th.

7            On June 8th Kazakhstan said, Docket 136-5, to the

8    Stati parties, No, we disagree with your characterization of

9    the magistrate judge's ruling.  I kid you not.  This is what

10   people were spending their time doing.  And it's unbelievable

11   to me that your client is going to pay for this.  And

12   Kazakhstan said, Your requests were not, quote, substantially

13   narrowed, close quote, and we've already provided a

14   counterproposal on September 9th, 2019.

15           I mean, really, am I the only one keeping score here?

16   What was transmitted on September 9, 2019 was, We will give you

17   documents responsive to eight requests related to assets in the

18   United States, if you agree to stay discovery pending our

19   appeal.  They didn't agree.  The appeal is over.  There's been

20   no counterproposal to the 40 requests, and Kazakhstan's lawyers

21   know it.  And if they really had no problem with the eight

22   requests for production, where are the documents?

23           Kazakhstan also said, on June 8th, Well, gee, there's

24   all this new stuff happening.  You gave us interrogatories, the

25   magistrate judge wants a status report and we need to think

1     about all that, so they wasn't actually our response.  We'll

2     give you a real response on June 11th.  On June 11th, Docket

3     136-6, Kazakhstan says, The Court has now made clear that the

4     scope of permissible discovery in this case is limited, and is

5     limited to information that's relevant to the property of the

6     Republic of Kazakhstan in the United States.  And they quoted

7     several sentences of my order, adding their own emphasis,

8     because apparently the lawyers from Kazakhstan love italics.

9     And each thing they emphasized, as Kazakhstan did in its

10    appeal, is that assets abroad are not attachable.

11            But that's not the issue.  That doesn't mean, and the

12    opinion did not say, that the Stati parties did not ask

13    questions about foreign bank accounts or take any discovery

14    about assets or operations abroad.  Records of funds coming and

15    going to a foreign bank account could very well yield the

16    existence of an account or assets in the United States, which

17    is what I said they could explore.  This is discovery.

18    Kazakhstan did not point to and could not point to a sentence

19    where I said the scope would be as limited as it was trying to

20    claim.

21            So on June 19th, Docket 136-7, the Stati parties

22    reply, You're relitigating the appeal you just lost, and by the

23    way, where is that counterproposal?  And with that, the status

24    report was due and they filed it on Docket 136.  It took the

25    parties 13 pages, with 43 pages of exhibits, to describe the

1    exactly nothing that had transpired for the previous month.

2            The review of the exhibits attached to the report was

3    even more frustrating to me than the review of the docket, and

4    I'm betting that it did very little to impress Magistrate Judge

5    Robinson.  What we do know is that upon review of the parties'

6    status report and all of these attachments, the magistrate

7    judge came to the entirely unremarkable and appropriate

8    conclusion that the Republic of Kazakhstan -- which had yet to

9    produce a single piece of paper and had yet to meet and

10   confer -- had not complied with her order of August 12th, 2019.

11           Therefore, she said in an order, a year later, June

12   24th, 2020, you need to comply, and you need to comply by July

13   8th.  I'm not going to read the entire minute order here, but

14   that order on the docket from June 24th is what Kazakhstan has

15   now appealed in Docket 136 and that's why we're here.

16   Petitioners oppose the appeal at Docket 140, and respondent's

17   replied at Docket 142.

18           So let me start with my conclusion.  Exercising the

19   broad discretion that I have in overseeing discovery under the

20   Federal Rule of Civil Procedure 26, and post-judgment discovery

21   in particular under Rule 69 and the authorities I already set

22   out in my rushed order dated May 18, including *Republic of*

23   *Argentina versus NML Capital, Ltd.*, 573 U.S. 134, at 138, from

24   2014, the magistrate judge's order will be affirmed, with

25   certain additions and revisions which I'm going to detail

1    later.

2           I find that the magistrate judge was appropriately

3    fed up when she ordered Kazakhstan -- which had yet to produce

4    a single piece of paper -- to start complying with its legal

5    obligations.  I find that she appropriately did not bother to

6    order Kazakhstan -- which had yet to meet and confer

7    meaningfully about anything -- to meet and confer first.  The

8    arbitral award was upheld.  The magistrate judge said, Produce

9    documents.  It was an order.  Kazakhstan appealed her order.

10   I, too, said the order to produce documents is affirmed.  That

11   was an order.  But the gamesmanship did not stop.  The

12   intransigence did not stop.

13          The parties have showed nothing but utter disrespect

14   to a magistrate judge of this court who seems to have the

15   patience of Job.  But you did that at your peril because I

16   guess I don't, at least not when I'm supposed to read a bunch

17   of self-serving, completely unproductive correspondence between

18   two civil litigators who are being anything but civil.  And

19   maybe it's because I know that the magistrate judges in this

20   courthouse are quite busy.  They're dealing with matters of

21   individual liberty every day.  And during this public health

22   crisis, they're dealing with matters of life and death, during

23   this time of COVID in the D.C. jail and the Bureau of Prisons,

24   the gun violence on the streets, the threats against the

25   judiciary, of immigrant children in detention camps.  Everyone

1    in this building is dealing with issues of life and death.  The

2    magistrate judge should not have to waste her time pulling

3    adults apart on the playground.

4         The level of effort on the part of the attorneys, the

5    time, the paper, and the judicial resources that have all been

6    devoted to the discovery dispute I referred for resolution have

7    long since passed the point where they can be considered to be

8    reasonably justified by the nature and scope of the dispute

9    itself.

10        So, I hope you all have found it satisfying because,

11   as I said at the outset, it's over.  I have affirmed her again.

12   You've been ordered to comply with the discovery request and I

13   want it done and I want it done now.  And it will happen or

14   both respondent and its counsel will be subject to contempt,

15   not just of her orders, but of mine.

16        Also, any of you who are participating in this

17   litigation in this court, if -- who are not licensed to

18   practice, are here through the discretion and grace of a ruling

19   permitting your appearance pro hoc, you should be advised that

20   such an order can be revoked.

21        Respondent also asked the Court to deny the motion

22   for sanctions that petitioners filed in December 2019 following

23   their failure to produce any documents.  That's Docket 129.

24   Because that motion deals with defiance of the magistrate

25   judge's orders and the magistrate judge has not yet decided

1    that motion, an appeal of that to me is premature and I'm not

2    going to address it.

3          Now I want to go over my reasons for my ruling in a

4    little more detail.  First of all, Kazakhstan claims that the

5    magistrate judge improperly rubber-stamped the request for

6    production, claims that it's confused about which request it

7    was supposed to respond to, and it raised some objections about

8    the scope of the request for production.  And that's all in

9    their objections at page 2, and then 17 through 33.

10         Kazakhstan asks the Court to vacate the June 24th

11   order, direct the parties to meet and confer about petitioners'

12   revised document requests, and to submit any unresolved

13   disputes to the magistrate judge for resolution.

14         One problem with this is that Kazakhstan did not seek

15   a stay of the August 13 order to produce documents by November

16   8th pending its appeal of that order.  It granted itself a stay

17   and simply declined to comply while the appeal was pending.  It

18   did not confer with petitioners about the request, nor did it

19   produce any documents, even the ones it conceded were relevant,

20   almost a year ago, related to the assets in the United States.

21   And it hasn't met and conferred or produced any records in the

22   two months after the Court upheld the appeal either.

23         So Kazakhstan's demand now that the Court has to give

24   them a chance to meet and confer and clarify things rings

25   hollow.  It had nearly a year to confer with petitioners about

1   the 40 requests remaining and the proposal.

2        So I will uphold the magistrate judge's June 24th

3   finding that respondent has failed to comply with the August

4   13, 2019 order.  Respondent has failed to confer with

5   petitioners in any meaningful way and it refused to produce

6   responsive documents by November 8, 2019 or by July 8, 2020, as

7   ordered.

8        Respondent's description of the law that applies to

9   this situation is also inaccurate.  In its reply, Docket 142,

10  it said the Federal Rules of Civil Procedure make it clear that

11  discovery in aid of execution is not unlimited.  As this Court

12  has explained, the only lawful purpose of discovery is to

13  locate and identify property that's subject to attachment and

14  execution in support of the judgment at issue.

15       The only proper discovery in this case is that which

16  is relevant to locating property that meets those requirements

17  and is proportional to the needs of the case.  It completely

18  ignores that portion of my order that flat out rejected

19  respondent's continued insistence that there are special limits

20  to discovery in aid of execution of a judgment.

21       On page 6 of my opinion I quoted the Supreme Court,

22  which trumps all of us, that said, Rules governing discovery in

23  furtherance of post-judgment execution are, quote, quite

24  permissive, close quote.

25       Therefore, when respondent says to me:  With that

1   basic and undisputed principle as the starting point, one might

2   have expected the Statis to explain how the discovery that has

3   now been ordered meets their standards, especially given that

4   in its objections Kazakhstan noted that the absence of a

5   proffer will advance an inquiry.

6        Well, when you tell me that Stati has failed to

7   grapple with basic and undisputed points, you have it exactly

8   upside down.  It is Kazakhstan that has failed to grapple with

9   the basic and undisputed starting points here, which is that

10  Rule 26 is broad and Rule 69 is broad.  And citing its own

11  objections isn't authority for anything.

12       There's no point in continuing to conflate what is

13  attachable with what is discoverable because that's not what

14  the law says and that's not what I have ruled.

15       Kazakhstan's claimed confusion about what the

16  document requests are that are at issue is equally problematic.

17  If it was unsure about what requests were the subject of the

18  magistrate judge's order, it could have asked the magistrate

19  judge for clarification.  And I notice that this, too, is an

20  example where respondent's aggrieved tone is completely

21  unjustified by the situation.

22       Kazakhstan says, in essence, how dare she order us to

23  respond to the narrowed request for production.  When she

24  ordered us to produce documents way back in August 2019, she

25  didn't even know what that list would include.  Well, it's true

1       that the narrowed list did not exist and the magistrate judge

2       didn't know what the specific requests were on August 12th,

3       2019 -- 2019 -- when she issued her first order.  That was the

4       day she ordered the parties to narrow the list.  But they've

5       been on the docket since September 9th, 2019.  And it's the

6       order from after that, a year later, July 2020, not the one

7       from August 12th, that's being appealed right now.

8              So Kazakhstan's contention that it was somehow

9       outrageous for the magistrate judge to take them into account

10      in her order of July 2020, the suggestion that she couldn't

11      have possibly understood what she was ordering them to do, is

12      not the least bit persuasive.  And if Kazakhstan had any

13      constructive proposals for coming up with a list of requests to

14      which it would respond, it had a year to transmit them.

15             But in the event there's any possible lack of clarity

16      about what to do and when to do it or which requests needed to

17      be responded to and which don't, I'm going to take care of all

18      of that for you right now.  In doing so I'm considering, in my

19      discretion, the legal limits on what can be attached in

20      enforcing an arbitral award and all the principles set out in

21      Rule 26(b)(1) that parties may obtain discovery regarding any

22      non-privileged matter that's relevant to a party's claim or

23      defense and proportional to the needs of the case, considering

24      the importance of the issues at stake in the action, the amount

25      in controversy, the parties' relative access to the relevant

1    information, the parties' resources, the importance of

2    discovery in resolving the issues, and whether the burden or

3    expense of the proposed discovery outweighs its likely benefit.

4    I'm also considering the fact that the rule tells me

5    information within the scope of discovery need not be

6    admissible in evidence to be discoverable, which bears on the

7    point about whether the documents -- the assets have to be

8    attachable to ask questions about them.

9            Because document discovery has not even moved off the

10   starting blocks, and with all of the principles of Rule 26 and

11   all of the law that both sides have provided me in mind, it is

12   hereby ordered that:

13           Respondent must search for documents responsive to

14   the eight requests identified in its own email of September 9,

15   2019, Docket 118-2, page 3.  That is, requests 1, 5, 7, 10, 12,

16   14, and 17, as revised to omit the Kazakhstan

17   instrumentalities, for the moment.  And it must produce all

18   responsive, non-privileged documents to petitioners by August

19   31st, 2020.

20           A joint status report concerning compliance with this

21   portion of my order must be submitted to the magistrate judge

22   on September 1st, 2020.

23           With respect to the remainder of the 40 requests for

24   production that were still standing after the petitioners'

25   narrowing of their request, see Docket 119-3, it is further

1    ordered that petitioners must search for and produce:

2         First, all non-privileged documents that are

3    responsive to the following requests, with the definitions,

4    threshold amounts, time periods, geographical scope, and any

5    other matters as narrowed by the petitioners in August 2019:

6    Requests 2, 3, 4, 6, 11, 13, 20, and 31.

7         They must produce non-privileged records responsive

8    to request 15, but only those reflecting the identification of

9    any accounts from which payments to the U.S. law firms and

10   consultants were made, and the dates and the amounts.

11        They must produce non-privileged documents that are

12   responsive to requests 22 and 29, but only to the extent that

13   they relate to transfers to third parties from the U.S. or

14   accounts based in the U.S.

15        Non-privileged documents response to requests 25 and

16   26 to the extent any such debts are secured by collateral or

17   security within the U.S. or are to be paid in the U.S. or from

18   a U.S. account.

19        Non-privileged document responsive to requests 27 and

20   28 to the extent any such debts are secured by and collateral

21   or security within the U.S. and are to be paid in the U.S. or

22   to a U.S. account.

23        Non-privileged documents responsive to request 30,

24   limited to documents reflecting payments to those firms'

25   international affiliates for work performed in the U.S., or

1    payments to those firms' international affiliates from accounts

2    in the U.S.

3         Non-privileged documents responsive to request 36,

4    limited to the transfer or disposal of assets within the U.S.,

5    and;

6         Any documents responsive to requests 1, 5, 7, 10, 12,

7    14, and 17 insofar as they relate to the narrowed definition of

8    the Republic of Kazakhstan instrumentalities.

9         And, it must produce all those categories of

10   documents by September 21st, 2020.

11        A joint status report concerning compliance with this

12   portion of my order must be submitted to the magistrate judge

13   on September 22nd, 2020.

14        The following requests are overbroad as written and

15   they must, therefore, be the subject of an actual, good faith

16   effort by the parties to meet and confer to limit them as I'm

17   about to describe.

18        Requests 8 and 9, like some others, are overbroad and

19   unduly burdensome and disproportionate to the issues at stake

20   insofar as they seek, quote, all documents related to, close

21   quote commercial transactions in the United States.  Respondent

22   may seek the production of records that reflect the existence

23   of the transactions, the identity of the counterparty, the

24   amount of money involved, the method of payment, and any

25   account in the United States from which any payment was

1    supposed to be made.  But otherwise "all documents" is

2    overbroad.

3            Requests number 16 and 17 are overbroad insofar as

4    they call for the identification of any assets in the relevant

5    country.  Petitioners must narrow the requests to focus them

6    more specifically on records that could shed light on the

7    existence of assess within the United States or transfers of

8    assets to the relevant countries from the United States during

9    the relevant time period.

10           Requests 23 and 24 must be narrowed to call for the

11   production of records related to those commercial transactions

12   that involve the payment of money to or from the United States,

13   a counterparty in the United States, or contract performance in

14   the United States.  And as I noted before, the term "all

15   documents" related to even those transactions is overbroad as

16   it goes beyond what might be necessary to shed light to the

17   issues at hand.

18           Request 35 is somewhat vague and overbroad and could

19   be limited to address records related to the location,

20   availability of assets for satisfaction of the arbitral award

21   or in some other way to focus directly on what's actually being

22   sought.

23           Requests 37, 38, 39, and 40 will similarly be the

24   subject of further communication among counsel.  I'm not

25   entirely certain of the relevance of all flights taken, and the

1     request could be more narrowly tailored.

2          The parties must also meet and confer in an effort to

3     narrow the scope of the interrogatories to conform with what

4     I've just explained is the permissible scope of the request for

5     production.  This will start with petitioners' transmittal to

6     respondent of a narrowed set of interrogatories by August 13th.

7          With respect to all the matters about which I've just

8     directed the parties to meet and confer, they must do so by

9     August 19, 2020.  And they must do so in person, by phone, or

10    by video conference.  Mailing letters back and forth doesn't

11    help.  Email doesn't count.  This has to be in person, or at

12    least by Skype or video, or Zoom, where you can see each other

13    and come up with an agreed scope and schedule for compliance in

14    a single conversation.  If the parties do that, and if they're

15    in agreement that they've come to an impasse, they may then

16    seek the assistance of the magistrate judge.

17         However, you're ordered that if and when the parties

18    seek to resolve any dispute with the magistrate judge, you must

19    seek to resolve it by a telephone or video conference with the

20    magistrate judge assigned to the matter before you may file a

21    single piece of paper -- no motions to compel, no motions for

22    protective order, no motions for clarification, or motions for

23    sanctions -- unless and until you have the express, advance

24    permission from the magistrate judge to brief the issues in

25    writing, or the magistrate judge establishes some other

1    procedure for discovery disputes.

2         Motions may not exceed five pages in length and they

3    must be stripped of condescension, sarcasm, and personal

4    attacks.  You won't need italics unless citing the name of a

5    case.  And you can forget bold font in the body of the pleading

6    as well.  And you may not attach your own emails or letters to

7    the pleadings unless requested by the magistrate judge making

8    the decision.

9         This rule does not apply to a joint motion for

10   protective order to protect the confidentiality of certain

11   records, although it would apply to a dispute over the terms of

12   such an order.

13        All these terms and conditions will still apply if

14   the matter is reassigned to any other magistrate judge of this

15   court.  Although any magistrate judge assigned to the matter

16   may, in its discretion, devise its own set of procedures.

17        A joint status report concerning compliance with this

18   portion of my order, the meet and confer portion of my order,

19   must be submitted to the magistrate judge on August 20th, 2020.

20        With respect to any request I haven't listed yet or

21   any aspects of the requests that I carved out, it's hereby

22   ordered that the question of whether the Stati parties may

23   pursue any of that additional discovery sought in those

24   requests or the corresponding interrogatories will be deferred

25   until after Kazakhstan has complied with the request I've

1    ordered it to comply with and responded to the interrogatories

2    that the parties agree or the magistrate judge determines are

3    consistent with this ruling.

4         For instance, any dispute concerning requests 32, 33,

5    and 34 must await the receipt of the information responsive to

6    request 31.  At that time, petitioners will be required to file

7    a motion with the magistrate judge asking to pursue the

8    additional discovery that specifies exactly what it wants to

9    request and why that information could lead to the

10   identification of attachable assets.

11        To reiterate, though, as these rulings reflect, post-

12   judgment discovery is not limited to questions about attachable

13   assets.  Information about assets and transactions in other

14   countries could bear on the existence of assets in the

15   United States, but the Stati parties will have to explain how

16   with respect to any request it's still seeking to enforce.

17        Finally, if either party requires a reasonable

18   extension of any of the deadlines set in this order, they're

19   required to meet and confer pursuant to Local Civil Rule 7(m)

20   and file any motion for extension, supported by good cause,

21   with the magistrate judge for decision.

22        Furthermore, Docket 143, petitioners' motion to file

23   a surreply to the reply with its hundreds of pages of documents

24   attached is hereby denied as moot.

25        First of all, the reply was all about which foreign

1    assets were attachable, which, as I've said, is beside the

2    point.  Second, the evidence about the decision of the English

3    High Court and the Swedish Court of Appeals decision wasn't new

4    evidence.  The Stati parties had already given me those

5    decisions themselves.  The exhibits attached to the reply were

6    simply Kazakhstan's legal take on them.  None of it bears on

7    the Court's consideration of the narrow issue before it today,

8    which is simply the validity of the magistrate judge's

9    discovery order.

10         With that, my ruling is complete and this matter is

11   remanded to the magistrate judge for proceedings consistent

12   with this order.

13         I note that Kazakhstan repeatedly insists that this

14   is a foreign arbitral award and its assets are in foreign

15   countries.  The way to avoid further proceedings in the

16   United States, then, would be to satisfy the arbitral award

17   with those assets and jointly inform the Court that that has

18   been accomplished.  And you're welcome to do that at any time.

19         Thank you.

20         MR. BERGER:  Thank you, Your Honor.

21         MR. KIRTLAND:  Thank you, Your Honor.

22                         *   *   *

23

24

25

CERTIFICATE OF OFFICIAL COURT REPORTER

I, JANICE DICKMAN, do hereby certify that the above and foregoing constitutes a true and accurate transcript of my stenographic notes and is a full, true and complete transcript of the proceedings to the best of my ability.

Dated this 10th day of August, 2020

_____

Janice E. Dickman, CRR, CMR, CCR
Official Court Reporter
Room 6523
333 Constitution Avenue, N.W.
Washington, D.C.  20001